811 A.2d 978

COMMONWEALTH of Pennsylvania, Appellee

v.

Robert WHARTON, Appellant.

Supreme Court of Pennsylvania.

Submitted March 2, 1999.

Decided Nov. 25, 2002.

88

Robert Brett Dunham, Philadelphia, for appellant, Robert Wharton.

Catherine Marshall, Philadelphia, for appellee, the Com. of PA.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION OF THE COURT

Justice CASTILLE.

Appellant appeals the trial court's denial of relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* For the reasons set forth herein, we affirm the order of the PCRA court.

This Court summarized the basic facts underlying appellant's conviction in a previous appeal, as follows:

On January 30, 1984, Appellant and Eric Mason gained entrance to the Hart residence at knife point. Appellant forced Mr. Hart to write him a check for work over which Appellant and Hart had disputed. After tying up Mr. and Mrs. Hart, Appellant and Mason took Mrs. Hart upstairs.

They covered her eyes, nose and mouth with duct tape, tied her hands and feet with neckties, strangled her using a necktie, and held her head under water in the bathtub until she stopped breathing. Mr. Hart was taken to the basement where he was forced to lie down with his face in a pan of water while either Appellant or Mason held his foot on Hart's back and pulled on a[n] electrical cord around Hart's neck causing his death. Appellant and Mason also abandoned the Hart[s'] infant daughter in a bedroom after turning off the heat in the house.

*Commonwealth v. Wharton*, 542 Pa. 83, 665 A.2d 458, 459–60 (1995), *cert. denied*, 517 U.S. 1247, 116 S.Ct. 2504, 135 L.Ed.2d 195 (1996) (*Wharton II*).[1]

In July of 1985, following a jury trial, appellant was found guilty of two counts of first-degree murder, one count of robbery, and multiple counts of criminal conspiracy and burglary. The jury returned a sentence of death for each of the murders, and the court sentenced appellant to separate consecutive terms of imprisonment on the non-capital offenses. On direct appeal, this Court affirmed appellant's convictions but vacated the sentences of death and remanded for a new sentencing hearing. The Court did so because the trial court's penalty phase jury instruction pertaining to one of the three aggravating circumstances unanimously found by the jury—specifically, that the offense was committed by means of torture—was found to be "prejudicially deficient." *Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710, 723 (1992) (*Wharton I*). Following a second penalty hearing conducted in November and December of 1992, a jury again sentenced appellant to death and, on further appeal, this Court affirmed that sentence in 1995. *Wharton II*, 542 Pa. 83, 665 A.2d 458. Appellant was represented at trial and on both previous direct appeals by William T. Cannon, Esquire.

1. The 1995 opinion involved a direct appeal following a resentencing hearing. A fuller version of the complicated facts of this case are set forth in this Court's original 1992 opinion on appellant's initial direct appeal. *Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710 (1992) (*Wharton I*).

On June 28, 1996, appellant initiated the instant PCRA proceeding by filing a petition *pro se.* Present counsel, who were then associated with the Center for Legal Education, Advocacy, and Defense Assistance (CLEADA), and who are now associated with the Capital Habeas Unit, Federal Court Division of the Defender Association of Philadelphia, entered an appearance and filed an amended petition on January 20, 1997.[2] The Commonwealth filed an answer and moved that the petition be dismissed without a hearing. The PCRA court, per the Honorable Gary S. Glazer, notified appellant that his PCRA petition would be denied/dismissed in ten days without a hearing based upon the PCRA court's determination that the issues raised were without merit and/or waived. Appellant filed a response to the notice of denial/dismissal. Three days later, on June 23, 1997, the PCRA court issued an order denying PCRA relief, stating that the issues raised were "without merit and/or waived." Appellant filed for reargument, which the PCRA court denied.

Appellant appealed to this Court. On September 8, 1997, the PCRA court filed its opinion, which set forth the procedural history of the case, but then "adopt[ed] the reasoning of the Commonwealth in denying post conviction relief." Opinion, September 8, 1997, at 2. On November 5, 1999, this Court remanded to the PCRA court to file an opinion addressing all of the relevant issues. The PCRA court has since complied with that order.[3] We then granted the parties leave to file supplemental briefs in light of that opinion.

Shortly after filing his Initial Brief in this matter, appellant also filed a Motion to Remand to the PCRA court to supplement his previous PCRA petition with alleged "newly discovered evidence of the impact of racial discrimination" on his trial and sentencing. The alleged newly discovered evidence consisted of a statistical study of Philadelphia death penalty

2. Both the original and amended PCRA petitions were filed within one year of appellant's conviction becoming final on June 10, 1996.

3. The issuance of the PCRA court's opinion renders moot the first issue raised by appellant in this appeal—that the PCRA court's wholesale adoption of the Commonwealth's reasoning violated appellant's federal and state constitutional rights.

cases conducted by Professors David Baldus and George Woodworth and a 1987 videotape in which a Philadelphia assistant district attorney, Jack McMahon, described his views on jury selection. *See Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 589–90 (2000) (describing Baldus study); *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 729–30 (2000) (describing McMahon videotape). The Motion to Remand was denied by order of this Court entered on May 18, 1999.

Since the petition in this case was filed after January 17, 1996, it is governed by the 1995 amendments to the PCRA. To be eligible for relief under the legislation, a petitioner must prove by a preponderance of the evidence, *inter alia,* that the conviction or sentence he is collaterally attacking resulted from one of seven specifically enumerated circumstances. 42 Pa.C.S. § 9543(a)(2).[4] In addition, the PCRA petitioner must prove that the issues he raises have not been previously litigated or waived. *Id.* § 9543(a)(3).

Appellant raises twenty separate claims, many of which are procedurally barred, *i.e.,* they are previously litigated or waived under the PCRA, or they are waived for failure to raise them in the PCRA court below. For purposes of clarity,

**4.** Those circumstances are as follows:

(i) A violation of the Constitution of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(a)(i)–(viii).

this Court will not address appellant's claims *seriatim,* but instead will address those claims that are procedurally barred under Pennsylvania law first.

■ Three of appellant's claims and a portion of a fourth were fully addressed by this Court, the highest court in which appellant was entitled to review as a matter of right, on direct appeal. Under the PCRA, a claim is previously litigated if, *inter alia,* the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). Accordingly, we cannot address the following three claims: (1) that the trial court violated appellant's Pennsylvania and federal constitutional rights by refusing to sever his trial from that of his co-defendants (Argument VII), because we held on direct appeal that appellant was not prejudiced by the trial court's refusal to sever his trial, *Wharton I,* 607 A.2d at 717–19; (2) that the trial court violated appellant's Pennsylvania and federal constitutional rights by admitting the redacted confession of his co-defendant against that co-defendant at their joint trial (Argument VIII), because we held on direct appeal that appellant was not prejudiced by the admission of the redacted confession in light of the overwhelming evidence implicating appellant as the murderer, *id.;*[5] and (3) that the application to appellant's appeal of the amendments to 42 Pa.C.S. § 9711(h), which permit the Court to order a resentencing hearing upon a finding that a death sentence should be vacated, where the amendments occurred during the pendency of the appeal, constitutes an unconstitutional bill of attainder (Argument XVIII), because appellant is merely recasting his theory after we rejected his direct appeal contention that application of the amended section was an unconstitutional *ex post facto* law. *Wharton II,* 665 A.2d at 460.

5. In forwarding this particular claim of trial court error, appellant relies not just upon *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but also upon *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) and *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998)—cases which were not decided until after the trial of this matter.

■ In response to the Commonwealth's argument that these three claims were previously litigated, appellant admits that they were litigated on direct appeal, but asserts that he nevertheless is entitled to renew them because he has altered his theory of challenge. Specifically, appellant has added allegations that appellate counsel ineffectively litigated the claims because he did not invoke the cases or precise points that present counsel identifies (Reply Brief at 10).[6] This attempt to overcome the statutory previous litigation bar is unavailing for it is well-settled that a PCRA petitioner cannot obtain additional review of previously litigated claims by presenting new theories of relief including allegations of ineffectiveness. *See Commonwealth v. Bond,* —— Pa. ——, —— A.2d ——, ——, 2002 WL 1958492 at *3 (Aug. 23, 2002); *Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935, 939 & n. 2 (2001); *Commonwealth v. McCall,* 567 Pa. 165, 786 A.2d 191, 195–96 (2001); *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 253 (1988). Notably, appellant's argument on reply ignores this settled procedural authority.

■ In addition, we will not address the portion of Argument XII, concerning alleged admission of victim impact evidence, which pertains to testimony regarding the physical condition of the victims' seven-month-old daughter or photographs of the victims taken before the murders. This is so because we held in appellant's initial direct appeal that the testimony concerning the infant's condition was properly admitted, *Wharton I,* 607 A.2d at 719–20, and, on direct appeal of appellant's resentencing hearing, we held that appellant was not prejudiced by the admission of a photograph of the victims taken before they were brutally murdered. *Wharton II,* 665 A.2d at 463.[7]

6. It must be noted that some of the cases now cited by appellant, such as *Gray v. Maryland,* did not exist when appellate counsel prosecuted the direct appeals; thus counsel would have been hard-pressed to invoke them.

7. Even assuming for the sake of argument that these four claims of alleged trial court error were not previously litigated, they would be waived under the PCRA because appellant failed to raise his present theories on direct appeal, despite an opportunity to do so. *See* 42

96

■ Appellant raises the following nine additional issues sounding in alleged trial court error or prosecutorial misconduct which could have been raised on direct appeal, but were not:

(1) Appellant was denied due process of law when the Commonwealth failed to correct the false testimony of a police officer (portion of Argument IV);

(2) The prosecutor's second penalty phase closing argument was improper (Argument VI);

(3) The trial court violated appellant's Pennsylvania and federal constitutional rights by permitting the submission to appellant's second penalty phase jury of an aggravating circumstance specifically not found by his first penalty phase jury (Argument X);

(4) The Commonwealth suppressed exculpatory evidence during appellant's first trial (Argument XI);

(5) Appellant was denied due process by the introduction of victim impact evidence and victim impact prosecutorial comments during both the guilt and second penalty phases (portion of Argument XII);

(6) The trial court erred in failing to charge the jury that a sentence of life imprisonment without parole would result in lifelong incarceration (Argument XIII);

(7) The trial court's improper reasonable doubt instruction at both the guilt and second penalty phases reduced the Commonwealth's burden of proof (Argument XV);

(8) The trial court's refusal to permit defense counsel to argue that its death penalty would be "basically irrevers-

Pa.C.S. § 9544(b) (issue is waived where petitioner failed to raise it and issue could have been raised on appeal); *Bond,* —— A.2d at ——, 2002 WL 1958492 at *3 (claims that could have been but were not raised on direct appeal "are waived under the PCRA"); *Bracey,* 795 A.2d at 940 (same); *Commonwealth v. Abdul–Salaam,* 2001 WL 1663976 (Pa. Dec 31, 2001) (same). The fact that appellant appends boilerplate assertions of counsel ineffectiveness for failing to raise certain of the claims (specifically, Argument VII and Argument XII), does not alter the fact that the claims of trial court error are waived. To the extent the boilerplate claims of counsel ineffectiveness are intended to raise distinct issues under the PCRA, they fail for reasons discussed in the text below.

ible" improperly diminished the jury's sense of responsibili-
ty (Argument XVI); and

(9) The trial court violated appellant's Pennsylvania and
federal constitutional rights by refusing to permit testimony
regarding appellant's religious beliefs and that his co-defen-
dant received a life sentence (Argument (XVII)).

All of these claims are defaulted under the PCRA waiver
provision, 42 Pa.C.S. § 9544(b). *See Bracey,* 795 A.2d at 940.

■ In his argument respecting some—but not all—of
these waived, record-based claims, appellant includes a boiler-
plate assertion that counsel was ineffective for failing to raise
the claim. In addition, appellant's Argument XIX sets forth a
one-paragraph, generic allegation of the ineffectiveness of
prior counsel for failing to raise all preceding issues, except
those already argued as claims of counsel ineffectiveness.
Argument XIX reads, in its entirety, as follows:

Counsel, who represented Appellant at trial, resentencing
and on direct appeal, was ineffective for failing to object to,
raise or otherwise litigate each of the above cited errors or
claims, except for those related to his own ineffectiveness.
Moreover, there was no strategic reason for these failures.
Accordingly, Appellant was denied the effective assistance
of counsel guaranteed by the Federal and State Constitu-
tions. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984).

Initial Brief of Appellant at 100. These boilerplate assertions
respecting prior counsel do not alter the fact that appellant's
claims are waived under the PCRA to the extent they sound in
trial court error.

■ To the extent that appellant intends his boilerplate tag-
lines and the boilerplate paragraph comprising Argument XIX
to raise numerous distinct constitutional claims of counsel
ineffectiveness, not suggested in his framing of the issues,
those claims are not waived under the PCRA, since this
proceeding represents appellant's first opportunity to chal-
lenge the stewardship of trial/direct appeal counsel. *See* 42
Pa.C.S. § 9543(a)(2)(ii). In addition, notwithstanding this

Court's abrogation of relaxed waiver on PCRA appeal, *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998), we have indicated that we will continue to afford some degree of latitude in construing the *pleadings* in capital PCRA appeals; *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 525 (2001); *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000).[8] In keeping with this latitude, we will not deem appellant's tacked-on claims of counsel ineffectiveness to be waived on grounds that he did not properly identify the claims as such or properly develop them in his brief.

■ Affording latitude by construing otherwise inadequate pleadings as intending to raise claims of counsel ineffectiveness, of course, cannot translate into laxity in applying the substantive constitutional standards that govern merits review of those claims. See *Williams*, 782 A.2d at 525 & n. 5 ("we make no suggestion here that there should be a relaxation of the substantive Sixth Amendment standard"). The test for counsel ineffectiveness is the same under both the Pennsylvania Constitution and the federal Constitution and appellant certainly does not forward distinct arguments under the two charters. *Bond,* —— A.2d at ——, 2002 WL 1958492 at *5. The test is the two-part performance and prejudice test as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Bell v. Cone*, 535 U.S. 685, ——, 122 S.Ct. 1843, 1850–52, 152 L.Ed.2d 914 (2002); *Commonwealth v. (Charles) Pierce*, 515 Pa.153, 527 A.2d 973 (1987).[9] To prevail on a claim that counsel was constitutionally ineffective, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to

**8.** Of course, the question of affording latitude in construing appellate pleadings in capital cases involves application of this Court's appellate rules and principles of appellate jurisprudence and not any provision of the PCRA or rule regarding issue preservation below. *See Williams*, 782 A.2d at 534 (Castille, J., concurring) (noting distinction between waiver under PCRA and waiver as question of appellate jurisprudence).

**9.** In *(Charles) Pierce*, this Court recognized that the *Strickland* test was the proper test to evaluate ineffectiveness claims raised under the Pennsylvania Constitution.

effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. *Commonwealth v. (Michael) Pierce*, 567 Pa.186, 786 A.2d 203, 213 (2001); *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999).[10] A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *(Michael) Pierce*, 786 A.2d at 221–22; *see also Williams*, 782 A.2d at 525 ("PCRA counsel must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claim asserted with respect to each individual facet of a layered ineffectiveness claim, including that which relates to appellate counsel."); *Albrecht*, 720 A.2d at 701 ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.").

Here, although appellant off-handedly accuses counsel of being ineffective for failing to raise some of the waived claims he primarily articulates as claims of record-based trial court error or prosecutorial misconduct, he does not develop those constitutional claims in any substantively meaningful fashion. Claims of ineffective assistance of counsel are not self-proving; thus, appellant's undeveloped arguments respecting counsel are insufficient to prove an entitlement to relief. *Bond*, —— A.2d at ——, 2002 WL 1958492 at *4 ("To the extent that appellant appends boilerplate allegations of ineffectiveness of PCRA counsel ..., for failing to raise these claims below, those distinct claims of PCRA counsel ineffectiveness fail because they are undeveloped."); *Bracey*, 795 A.2d at 940 n. 4 ("Such an undeveloped argument, which fails to meaningfully

10. Although the test for ineffectiveness in Pennsylvania is the same as *Strickland*'s two-part performance and prejudice standard, in application this Court has come to characterize the test as a tripartite one, by dividing the performance element into two distinct parts, *i.e.*, arguable merit and lack of reasonable basis. The Third Circuit has recognized that Pennsylvania's standard for assessing claims of counsel ineffectiveness is materially identical to *Strickland*. *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir.2000).

discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief."); *Commonwealth v. Abdul Salaam,* 2001 WL 1663976, at *1 n. 3 (Pa. Dec. 31, 2001) (same); *(Michael) Pierce,* 786 A.2d at 221 (appellant cannot prevail on claim of ineffective assistance of counsel when claim is not developed); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332, 1335 (1981) (mere abstract or boilerplate allegations of ineffectiveness "cannot be ineffectiveness"). Accordingly, although appellant's boilerplate claims of counsel ineffectiveness are not waived under the PCRA or under our rules, it is clear that appellant has failed to prove his entitlement to relief under the governing constitutional standard and the PCRA.

█ Appellant raises an additional record-based claim of error which is waived because it was not raised in the PCRA court below. Specifically, appellant claims that his waiver of his right to counsel during his initial police questioning was the product of coercive police conduct involving threats and psychological coercion in violation of his Pennsylvania and federal constitutional rights (Argument V). This claim is waived because claims cannot be raised for the first time on appeal to this Court. Pa.R.A.P. 302(a); *Bond,* —— A.2d at ——, 2002 WL 1958492 at *3; *Basemore,* 744 A.2d at 725; *Albrecht,* 720 A.2d at 704.

█ An additional claim, sounding in the alleged ineffective assistance of trial counsel, is waived for failure to present it in the PCRA petition below. Specifically, appellant claims that trial counsel was ineffective under the Pennsylvania and federal Constitutions for failing to: (1) impeach police testimony regarding the manner in which appellant's confession was obtained; (2) call witnesses at the pre-trial suppression hearing and the guilt phase of trial to counter the police version of his confession; and (3) impeach two other guilt phase witnesses on unrelated matters (Argument IV). Appellant argues that a remand is required on this claim. In response, the Commonwealth accurately notes that this multi-headed claim

was not raised in the original or amended PCRA petitions that were the subject of the dismissal order that is the subject of this appeal. Instead, appellant first attempted to raise this claim in the reargument motion he filed after the PCRA court's dismissal order. The trial court denied that reargument motion. Because this claim was never raised in the petitions that are the subject of this appeal, the Commonwealth argues, it is waived. We agree that the claim is unreviewable on this appeal. Pa.R.A.P. 302(a); Pa.R.Crim.P. 902(B) (formerly Rule 1502(B)) ("Each ground relied upon in support of the relief requested shall be stated in the [PCRA] petition"); *Bond*, —— A.2d at ——, 2002 WL 1958492 at *3 (claims not raised in PCRA court are waived); *Commonwealth v. Kenney*, 557 Pa. 195, 732 A.2d 1161, 1165 (1999) ("An appellate court is limited to reviewing the record of the proceedings below for error.").

Six claims remain for review, four of which sound in the alleged ineffectiveness of prior counsel under both the Pennsylvania and federal Constitutions. Those four claims allege that trial/appellate counsel was ineffective for: (1) failing to obtain and introduce mitigation evidence that appellant had made a positive adjustment to prison, was amenable to rehabilitation and did not pose a future danger (Argument II); (2) failing to secure for purposes of raising appellate claims transcription of the notes of jury selection from appellant's 1985 trial (Argument IX); (3) failing to investigate and present mitigating testimony from appellant's co-defendant that appellant supposedly was not the actual killer and therefore his role in the murders was relatively minor (Argument XIV); and (4) failing to raise each of the trial error claims appellant poses on this appeal (Argument XIX). The other two claims allege that: (1) the proportionality review of appellant's sentence conducted by this Court did not provide him with the meaningful appellate review mandated by 42 Pa.C.S. § 9711(h)(3)(iii) (Argument III); and (2) the cumulative effect of the errors alleged by appellant entitle him to relief (Argument XX).

 Appellant first claims that his trial counsel was ineffective for failing to obtain and introduce evidence that, during the seven years between appellant's first and second penalty hearings, he made a "sterling" adjustment to prison life and, therefore, he was not a future danger should he be sentenced to life in prison and was amenable to rehabilitation. Appellant argues that this positive adjustment to the prison environment was relevant mitigation evidence that his counsel was constitutionally obliged to produce under *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). The issue in *Skipper*, however, was not whether counsel could be deemed ineffective for failing to introduce this sort of evidence, but rather, whether the trial court there erred in excluding actually proffered evidence that the incarcerated defendant's behavior in prison had been good. The Court held that the proffered prison record evidence was relevant in mitigation of punishment.

Properly speaking, the issue before this Court is not whether appellant's prison adjustment was relevant mitigation evidence that the trial court erred in excluding. Instead, the issue is whether appellant's counsel was ineffective for failing to introduce evidence of that adjustment as mitigation evidence to convince the jury that he had made a positive adjustment to prison. Appellant contends that this evidence, along with a psychological evaluation, would have demonstrated to the jury that he posed no future danger, was a good candidate for rehabilitation, and should therefore be sentenced to life in prison.

This claim fails. Appellant (who has made no proffer as to what trial counsel would say in response to his averment of counsel's incompetence in this regard) has not demonstrated that trial counsel lacked an objectively reasonable basis for failing to produce this evidence. As the PCRA court noted in its opinion, appellant's adjustment to prison life was not nearly so "sterling" as appellant alleges. Appellant belatedly submitted voluminous prison records to the PCRA court on June 20, 1997, after the court had announced its intention to dismiss his petition. While certain aspects of these records indicated a

positive adjustment to prison life, other aspects were indeed not nearly so positive. For example, the records revealed that appellant had been cited for misconduct on several occasions, at least some of which were deemed "very serious misconducts;" he had been subject to "disciplinary time" for approximately five months in 1989; on one occasion, he was "less than truthful with [the Program Review Committee] and denied having anything to do with [a] confiscated weapon or handcuff key;" he was denied television and radio privileges due to "past misconducts for abusing/modifying his antennas;" and, on another occasion, "refused to even discuss why he had pieces of aerial and two lengths of antenna" indicating that he "did the time" and therefore did not have to discuss the infraction.[11] Given that the evidence respecting appellant's adjustment to prison life cut both ways, counsel can hardly be deemed constitutionally incompetent for failing to produce it.

■■■ Moreover, in assailing counsel's performance, it is notable that appellant never discusses the penalty phase presentation actually made by counsel, with the aim of demonstrating why the course counsel is faulted for failing to pursue should be deemed to offer a greater prospect for success than the course counsel actually pursued. In this regard, it is notable that the equivocal prison record evidence, had it been introduced, would have sounded under the catch-all mitigating circumstance, which the jury in fact found in appellant's second penalty phase hearing. Appellant has not demonstrated that he was prejudiced by his counsel's failure to introduce this equivocal prison record evidence as additional proof of this mitigating circumstance found by the jury.[12]

11. Program Review Committee Decision and Rationale Reports dated 6/8/88, 4/5/89, 6/7/89, 8/2/89, 9/13/89, 12/6/89, and 1/10/90.

12. In his Reply Brief, appellant asserts that counsel must be deemed not to have even reviewed these records, since that is the way appellant "pled" this claim, and thus counsel cannot be found to have made a strategic decision in this regard. According to appellant, his bald assertion that counsel did not review the records—an assertion that was not accompanied by a signed certification stating, *inter alia*, "the substance" of trial counsel's proposed testimony on this alleged factual point, *see* Pa.R.Crim.P. 902(A)(15)—automatically entitles him to a hearing to discover whether counsel in fact reviewed the records and/or

■ Appellant next claims that his direct appeal counsel—who also was trial counsel and thus participated in *voir dire*—was ineffective *per se* for allegedly failing to secure the transcripts of jury selection from appellant's 1985 trial. Appellant argues that the failure to secure the *voir dire* transcripts rendered counsel unable to effectively prosecute the direct appeal because counsel could not raise jury selection-related issues absent the notes. Appellant also argues that current counsel has been hampered by the absence of the notes.

The Commonwealth responds by noting that the trial *voir dire* transcripts in fact are in the quarter sessions file that was forwarded to this Court. Indeed, ten volumes of *voir dire* transcripts, one from each day of jury selection in 1985, are part of the record on appeal. Moreover, both the court's docket and various stenographic attestations on the transcripts themselves indicate that these notes were part of the record that was forwarded to this Court on direct appeal. Thus, appellant's bald accusation that prior counsel ineffectively failed to secure the notes, and thus rendered himself unable even to consider raising claims relating to the *voir dire* he had conducted—an accusation that, once again, was not accompanied by any proffer as to what counsel would have said in response to the accusation—unquestionably is meritless.

■ Confronted with the fact that the *voir dire* testimony in fact had been transcribed and was available to prior counsel, appellant, in his Reply Brief, notes that he has since reviewed that testimony and then attempts to raise a new argument. Specifically, appellant claims that those notes reveal that the Commonwealth in that 1985 trial employed its peremptory challenges in a racially discriminatory manner, in violation of the future decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This new record-

made a strategic decision with respect to them. We disagree. This Court has made clear that "[a]n evidentiary hearing ... is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 n. 8 (2000).

based claim is multiply waived. First, the claim could have been raised at trial and on direct appeal—assuming that appellant had the foresight to predict the *Batson* decision (as Mr. Batson had) and thus would have been entitled to its new rule—but it was not, and thus it is not cognizable under the PCRA. Second, the claim was not raised before the PCRA court below. Pa.R.A.P. 302(a). And, finally, the claim is waived because it was raised for the first time in a reply brief. *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 726–27 (2000) ("A reply brief, however, is an inappropriate means for presenting a new and substantively different issue than that addressed in the original brief.").[13]

 Appellant next claims that trial counsel was ineffective for failing to investigate and present mitigating evidence at the second penalty phase hearing in the form of testimony from his co-conspirator and co-defendant, Eric Mason, to the effect that appellant's role in the murders supposedly was relatively minor. In support of this claim, appellant submitted a declaration from Mason, who had been spared the death penalty following their joint trial, stating that, had appellant's trial counsel contacted him at the time of appellant's second penalty phase hearing, Mason would have testified that he, not appellant, was the actual killer, while appellant helped him only in some minor ways. Mason's long-after-the-fact declaration, forwarded at a time when he had nothing to lose, was directly contrary both to Mason's prior statement in which he claimed that appellant committed both murders and to appellant's own confession to the murder of Ferne Hart.

 To prove counsel ineffective for failing to discover and call a witness, a defendant must prove: (1) the existence and

**13.** In his Reply Brief, appellant acknowledges the existence of the notes, and explains that his assertion that they had never been transcribed was premised upon their unavailability when counsel previously reviewed the case file in the court below, and his inability to then secure a transcription from the original stenographic tapes, because those tapes had been lost. Notwithstanding the representations in the Reply Brief, appellant's Supplemental Brief burdens the Court with the re-assertion of the claim that appellate counsel was ineffective in allegedly failing to secure transcription of the *voir dire* notes.

availability of the witness; (2) counsel's actual awareness of, or duty to know of, the witness; (3) the witness's willingness and ability to cooperate and appear on the defendant's behalf; and (4) how the absence of the witness's testimony prejudiced the defendant. *E.g., Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 945 (2001), *citing Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293, 298 (1996). This claim of counsel ineffectiveness fails because appellant has not even attempted to demonstrate that trial counsel was, or should have been, aware in 1992 of Mason's alleged willingness to directly contradict his prior account of this crime and attempt to minimize appellant's role in the double murder. Moreover, even if appellant had proved that counsel knew of Mason's changed story and failed to present it, appellant has failed to show how that decision was objectively unreasonable. Given Mason's status as a convicted co-conspirator, the fact that he had nothing to lose at that point by attempting to help his cohort, and the rather transparent unreliability of this sort of recantation evidence, appellant cannot prove counsel was obliged to present such evidence or that he was prejudiced by its absence.

Appellant's final ineffectiveness claim is his boilerplate, catchall argument that his trial/appellate counsel was ineffective for failing to raise those claims previously argued which sounded in waived claims of trial court or prosecutorial error. As set forth above, such boilerplate allegations of ineffective assistance of counsel are insufficient to prove an entitlement to relief under the PCRA or the *Strickland/Pierce* standard.

Turning to appellant's final two non-ineffectiveness claims, appellant first argues that his death sentence must be vacated because the proportionality review performed by this Court pursuant to a now-repealed provision of the Sentencing Code, *see* Pa.C.S. § 9711(h)(3)(iii), supposedly was not "meaningful." We rejected a similar claim in *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 440 (1997), stating: "We have carefully reviewed these procedures and find nothing arbitrary or capricious in this scheme. Instead, we believe that our proportionality review comports with the General

Assembly's desire to afford capital defendants an additional check against the arbitrary imposition of the death penalty." Therefore, this claim fails.

Finally, appellant claims that he is entitled to relief from his conviction and sentence due to the cumulative effect of the errors he alleges. We have found that appellant's claims are either unreviewable or meritless; therefore, the alleged cumulative effect of non-errors does not warrant relief. *See Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1208–09 (1999) ("No amount of failed claims may collectively attain merit if they could not do so individually.").

For the foregoing reasons, we affirm the order of the PCRA court. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor in accordance with 42 Pa.C.S. § 9711(i).

Justice SAYLOR files a concurring opinion.

Mr. Chief Justice ZAPPALA and Mr. Justice NIGRO concur in the result.

Justice SAYLOR, concurring.

Particularly in light of the retroactive treatment of the abolition of relaxed waiver,[1] I believe that the Court should more vigorously, and more consistently, enforce the requirements of the criminal procedural rules pertaining to post-conviction cases, and, in particular, that of Rule of Criminal

1. In this case, Appellant's PCRA petition, amended petition, and initial brief to this Court were filed prior to the abrogation of the relaxed waiver doctrine in the PCRA context. *See Commonwealth v. Albrecht*, 554 Pa. 31, 45, 720 A.2d 693, 700 (1998). As such doctrine had been generally extended in this area and permitted review of the underlying allegations on their merits, without the necessity of establishing ineffectiveness, Appellant's focus in his PCRA petitions and in his initial brief to this Court was consistent with the then-existing standards governing the presentation of post-conviction claims. Thus, as I expressed in *Commonwealth v. Ford*, —— Pa. ——, 809 A.2d 325, 2002 WL 31398623 (2002) (plurality opinion), left to my own devices I would not penalize a post-conviction petitioner for failing to frame and develop claims consistent with the more stringent standards subsequently adopted by the Court. *See id.* at 337–38, 2002 WL 31398623 at *9 (Saylor, J., concurring).

Procedure 909(B)(2)(a), calling for adequate pre-dismissal notice of reasons for dismissal. *See Commonwealth v. Williams,* 566 Pa. 553, 568, 782 A.2d 517, 526 (2001).[2] As I have previously noted, a salutary effect of such rule is the timely exposure of ineffective assistance of counsel in the framing of post-conviction claims, providing some reasonable assurance that the single opportunity for review left available to a post-conviction petitioner in the courts of this Commonwealth may be a meaningful one. *See Commonwealth v. Lambert,* 568 Pa. 346, 376–77, 797 A.2d 232, 250 (2001) (Saylor, J., dissenting).

Here, the pre-dismissal notice provided by the PCRA court was, in all material respects, identical to that which was deemed insufficient in *Williams,* 566 Pa. at 569, 782 A.2d at 527, in which the Court remanded for, *inter alia,* "disposition in accordance with our rules." Although I therefore believe that the better course would be also to remand in this case, I am constrained in this regard, since subsequent to *Williams* a majority of the Court deemed Rule 909(B)(2)(a) an insufficient basis for such relief in a case such as this, where a previous remand has been effectuated for preparation of a PCRA court opinion. *See Lambert,* 568 Pa. at 369 n. 13, 797 A.2d at 246 n. 13 (opinion announcing the judgment of the court); *id.* at 373, 797 A.2d at 248 (Zappala, C.J., concurring); *id.* at 376, 797 A.2d at 250 (Cappy, J., concurring).

Additionally, and aside from the difficulties attendant to the retroactive abolition of relaxed waiver, *see supra* note 1, I remain uncomfortable with the manner in which the Court is administering waiver principles based on underdevelopment in the appellate briefing, *see, e.g., Commonwealth v. Bond,* —— Pa. ——, —— A.2d ——, 2002 WL 1958492, at *16 (Aug. 23, 2002) (Saylor, J., concurring), particularly since the construct that the Court is applying permits it to decline review without so much as a cursory examination of the strength and/or obviousness of the underlying claims of error and the PCRA

---

2. Rule 909(B)(2)(a) mandates that a PCRA court "state in the notice the reasons for the dismissal." Rule 909(B)(2) also requires the opportunity for response and consideration of the possibility for curative amendment. *See* Pa.R.Crim.P. 909(B)(2)(b), (c).

record. I acknowledge that where the same attorney represented the capital petitioner at trial and on direct appeal, the Court's recent decision in *Bond* now controls. Still, I note that, notwithstanding the relatively broad language presently employed by the majority, *see* Majority Opinion at 986–87, in cases where a post-conviction petitioner obtained new counsel for purposes of direct appeal, the Court has not yet retreated from its expressed decision to afford a degree of latitude relative to layered claims of ineffectiveness. *See Williams*, 566 Pa. at 567, 782 A.2d at 525.