J-S38021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE LUIS PERALTA, | |
| Appellant | No. 2971 EDA 2016 |

Appeal from the PCRA Order September 6, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0007919-2011

BEFORE:  GANTMAN, P.J., SHOGAN and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 08, 2017**

Appellant, Jose Luis Peralta, appeals from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  In addition, counsel for Appellant has filed an application to withdraw and a no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  In a previous memorandum filed by this panel, we temporarily denied counsel's request to withdraw and instructed him to send a letter to Appellant properly informing Appellant of his rights to immediately proceed *pro se* or via privately retained counsel. Appellate counsel has redrafted his letter to Appellant and submitted it to

_____

[*] Former Justice specially assigned to the Superior Court.

this Court. We now grant counsel's application to withdraw and affirm the order of the PCRA court.

The trial court summarized the history of this case as follows:

The victim in this case was six years old at the time of the offense on trial. She lived in a single-family residence located [on] Oak Road, in Warrington Township, Bucks County with her parents, her twelve-year-old brother, her two-year-old sister, her paternal grandfather, and her paternal aunt and [paternal aunt's] husband. On the evening of September 3, 2011, the victim's family held a party for family and friends to celebrate the baptism of the youngest child at a local hall they had rented. [Appellant] is not a relative of the victim and did not know the family prior to that day. At the time, [Appellant] lived in Brooklyn, New York, with his uncle Roberto Peralta. The victim's maternal uncle also resided in Brooklyn. This uncle chose to invite his friend, Javier Peralta, to the party. Javier Peralta, in turn, asked his nephew, [Appellant], to come along with him.

After the party, the victim's immediate family remained behind to pack up the food and other items. Afterward, on the drive home, the victim fell asleep in their car. When they arrived home, [Appellant], Javier Peralta, and Roberto Peralta were there. The victim's father had not invited them into his home and was surprised to find them there. "Out of courtesy," he did not tell them to leave. He carried the victim into her brother's bedroom on the ground floor of their home. Her mother changed her from her party dress into her pajamas. When she put her to bed, the victim was wearing underwear, a pajama top, and pajama shorts. When she left the room, [the victim] was asleep and the bedroom window was closed. [The victim's mother] left the bedroom light on and the bedroom door open. Shortly thereafter, she and her husband left the residence to pick up some of the party supplies that another family had taken from the hall after the party. The children remained at the house with the other family members and the Peraltas.

Testimony of the victim's family and evidence obtained from the scene established the following sequence of events. [Appellant] was present when the victim was put to bed in the ground floor bedroom at her residence. After the victim's parents left the home, [Appellant] entered the bathroom next to

- 2 -

the [victim's] room and went out the bathroom window. He then made forcible entry into the [victim's] room through the window. [Appellant] turned off the light, locked the door, and removed the [victim's] pajama shorts and underwear while the victim slept. When [the victim] awoke, she found [Appellant] in the room. When she tried to flee he struck her in the face. Injured, bleeding, and crying, she frantically tried to open the door, smearing blood on the wall and the door in the process. She was ultimately able to escape. [Appellant] fled through the now open bedroom window.

Specifically, the evidence established that after his parents left the residence to retrieve the party items, the victim's brother remained awake. He noticed the door to his bedroom where the victim was sleeping was open and that the light inside the room was on. Later, he saw [Appellant] walk into the hallway where [his] bedroom and the bathroom were located. Five minutes later, he heard screaming from that area. He ran to the bedroom and found that the bedroom door was locked from the inside. He and other family members were unable to force the door open. The family heard the victim yelling and crying on the other side of the door and instructed her to open it. When she finally opened the door, her family saw that she was not wearing her pajama shorts or underwear. She was crying and her hair was disheveled. She was bleeding from her nose and had a lot of blood on her face and pajama top. Her upper lip was swollen and she had a large lump on her forehead. While another family member called 911, the victim's aunt took her into the adjacent bathroom, cleaned off some of the blood and wrapped the victim in a blanket. Family members noticed that the bathroom window that had been previously closed was now open.

The police were initially dispatched to [a residence on] Oak Road for a report of a young girl bleeding at that location. En route, the information was updated to include a reported burglary in progress. Police arrived at the residence within two minutes of being dispatched. The victim's parents returned home as the police were arriving at the scene.

The police immediately spoke to the six-year-old victim. She reported that the man who assaulted her had a ponytail and was wearing a dark shirt. She stated that he fled the residence through the bedroom window. Shortly after their arrival at the scene, the police were notified that a neighbor had reported

seeing a person matching [Appellant's] description flee the residence, run across Oak [Road] and continue behind the residence across from the victim's home. After a brief foot chase, the person seen by the neighbor, later identified as [Appellant], ran into the police who were still responding to the scene. [Appellant] was apprehended at 3:07 AM. He was wearing a dark shirt, jeans and a sneaker on his left foot. His clothes were wet and covered with "debris from bushes and so forth." His hair was in a ponytail. Two baggies of white powder, later identified as cocaine, were found in an Altoids Mints tin seized from his person at his arrest. The victim was taken to Doylestown Hospital.

When police inspected the scene, the bathroom window and screen were open but undamaged. Forcible entry had been made through the bedroom window. The window was open. The screen was torn open. Police found and photographed scuff marks below that bedroom window. Police found [Appellant's] right sneaker below the window inside the bedroom. As the victim struggled to find and open the door after the assault, she transferred her blood onto the wall, the door, the door frame and the door jamb. Blood was found on the victim's pajama top. Bloody paper towels were found on the floor.

[Appellant] was interview[ed] on the morning of his arrest. After, [sic] being read his *Miranda* warnings, [Appellant] agreed to talk without an attorney present. During that interview, [Appellant] told the police that the victim was his niece, that he was at her residence for a party and that he first saw her at her home. After he was confronted with the fact that his sneaker had been found in the bedroom where the [victim] was attacked, [Appellant] told police that while at the residence, he went to the bathroom, walked past the bedroom where the victim was sleeping and saw a Hispanic male he identified as a gang member from Norristown in the room. He stated that he confronted the man, the two scuffled and the "gang member" went out the window. He stated that he gave chase and lost his shoe. [Appellant] did not respond when asked on multiple occasions how he knew the individual was a Hispanic male gang member from Norristown.

Ten days later, on September 14, 2011, the victim appeared at the child advocacy center to be interviewed. The investigating officer noted that [the victim] was afraid to have

the door to the interview room shut. When she was left alone, [the victim] began to draw. Unprompted, she drew a picture of her assailant, depicting him with a ponytail. When interviewed, she stated that she was sleeping and woke up without her pajama bottoms and underwear [on]. When she tried to get up, she was punched in the nose and head.

On September 4, 2011, [Appellant] was charged with attempted rape of a child; attempted involuntary deviate sexual intercourse with a child; attempted aggravated indecent assault of a child; indecent assault - forcible compulsion; burglary, criminal trespass, indecent assault, false imprisonment, unlawful restraint, simple assault, possession of a controlled substance, possession of drug paraphernalia, harassment, and criminal mischief. On December 5, 2011, a preliminary hearing was held. All charges were held for court.

On March 21, 2012, [Appellant] filed a petition for writ of *habeas corpus* challenging the sufficiency of the evidence presented at the preliminary hearing. On April 2, 2012, the [trial court] granted [Appellant's] *habeas corpus* petition as to the charges of attempted rape of a child; attempted involuntary deviate sexual intercourse with a child; attempted aggravated assault of a child; and indecent assault - forcible compulsion.

On April 15, 2012, [Appellant] entered a guilty plea to the remaining charges. On April 25, 2012, [Appellant] filed a motion to withdraw his guilty plea. On July 31, 2012, the [trial court] granted that motion.

On November 9, 2012, [Appellant] waived his right to a trial by jury and a [nonjury] trial was held[.] [Appellant] was found guilty of all remaining charges.

Trial Court Opinion, 10/3/13, at 1-6 (citations and footnotes omitted).

On December 18, 2012, the trial court sentenced Appellant to serve an aggregate term of incarceration of seventeen and one-half to forty years, to be followed by two years of probation. Appellant filed timely post-sentence motions. The trial court held an evidentiary hearing on February 22, 2013.

On May 23, 2013, the trial court vacated the sentence it had imposed for indecent assault, thus reducing Appellant's aggregate sentence to a term of incarceration of fifteen to thirty years, to be followed by two years of probation. That same date, the trial court denied Appellant's remaining post-sentence motions.

This Court affirmed Appellant's judgment of sentence on direct appeal. *Commonwealth v. Peralta*, 102 A.3d 532, 1846 EDA 2013 (Pa. Super. filed April 15, 2014) (unpublished memorandum). Subsequently, Appellant filed a petition for reargument/reconsideration with this Court, which was denied by an order dated June 18, 2014. The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on November 25, 2014. *Commonwealth v. Peralta*, 104 A.3d 3, 496 MAL 2014 (Pa. 2014).

On August 14, 2015, Appellant filed, *pro se*, the instant PCRA petition. The PCRA court appointed counsel to represent Appellant on September 29, 2015. On December 30, 2015, counsel filed an amended PCRA petition. On February 23, 2016, the Commonwealth filed an answer to Appellant's amended PCRA petition. The PCRA court issued notice of its intent to dismiss pursuant to Pa.R.Crim.P. 907 on June 30, 2016. On July 19, 2016, appointed counsel filed a reply to the PCRA court's notice of intent to dismiss. The PCRA court denied Appellant's PCRA petition on September 6, 2016. This timely appeal followed.

Appellant's counsel filed with the PCRA court a statement pursuant to Pa.R.A.P. 1925(c)(4) indicating his intent to seek permission to withdraw and noting that there were no meritorious issues supporting the appeal. The PCRA court did not draft a Pa.R.A.P. 1925(a) opinion, but rather authored a letter explaining that, in light of PCRA counsel's statement pursuant to Pa.R.A.P. 1925(c)(4), it was directing that the record be forwarded to this Court for review.

On March 10, 2017, PCRA counsel filed with this Court an application to withdraw and a *Turner*/*Finley* letter. Counsel appended to the application to withdraw a copy of the letter sent to Appellant, which advised Appellant that he could represent himself or that he could retain private counsel.

In a memorandum filed on August 25, 2017, this panel temporarily denied appellate counsel's request to withdraw, concluding that counsel's letter to Appellant contained contradictory and confusing language pertaining to when Appellant may invoke his right to proceed *pro se* or through privately retained counsel. Memorandum, 8/25/17, at 5. In addition, we determined that, due to Appellant's lack of fluency in the English language, an interpreter is necessary at all levels of this case. *Id*. at 8.

Ultimately, we issued the following directive:

> [C]ounsel is hereby instructed to refile his "no-merit" letter under *Turner*/*Finley*. His letter to Appellant shall provide, *inter*

*alia*, accurate notice of Appellant's immediate right to proceed *pro se* or with private counsel. [**Commonwealth v.**] **Muzzy**, 141 A.3d [590,] 512 [(Pa. Super. 2015)]. Moreover, any documents sent by counsel to Appellant must be translated and proper documentation must be filed with the appropriate court. Mindful of the need for proper translation of documents, counsel's revised petition to withdraw and certification of translation shall be filed within forty-five days of the date of this decision. Appellant shall have thirty days from receipt of the revised petition to file either a *pro se* brief or a brief by newly retained private counsel, if he so chooses. The Commonwealth will then have thirty days in which to file a responsive brief.

Memorandum, 8/25/17, at 8-9.

On October 30, 2017, counsel refiled with this Court his application to withdraw, a "no-merit" letter under **Turner**/**Finley**, as well as a copy of a revised letter to Appellant dated October 6, 2017. The October 6, 2017 letter alerted Appellant that he has the right to represent himself now or retain new counsel now. Application to Withdraw as Counsel, 10/30/17, Exhibit B. In addition, the letter to Appellant indicated that, should Appellant wish to respond to counsel's application, Appellant should do so in writing and should act within thirty days of the date of the letter. **Id**. Also, counsel appended to his application to withdraw Spanish-language copies of the application to withdraw, the "no-merit" letter, and the October 6, 2017 letter addressed to Appellant.[1] Appellant has not filed a response with this Court.

_____

[1] We remind counsel that, in the future, he should be more diligent in advising his clients that they have an immediate right to retain private
*(Footnote Continued Next Page)*

- 8 -

Prior to addressing the merits of Appellant's claim on appeal, we must first decide whether counsel has fulfilled the procedural requirements for withdrawing his representation. *Commonwealth v. Daniels*, 947 A.2d 795, 797 (Pa. Super. 2008). This Court has listed the following conditions to be met by counsel in seeking to withdraw in a collateral appeal:

> Counsel petitioning to withdraw from PCRA representation must proceed ... under [*Turner, supra* and *Finley, supra* and] ... must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> * * *
>
> [W]here counsel submits a petition and no-merit letter that ... satisfy the technical demands of *Turner*/*Finley*, the court-trial court or this Court-must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

*Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted) (brackets in original).

*(Footnote Continued)* ─────────

counsel or proceed *pro se* upon the filing of an application to withdraw. Indeed, given the frequent practice of this Court to decide applications to withdraw within the decision on the merits of the appeal, appellants should file any response to the application to withdraw promptly.

- 9 -

In the application filed with this Court, counsel explained that he had been appointed to represent Appellant at the PCRA proceedings and that he reviewed the case, evaluated the issues, conducted an independent review of the record, and concluded there were no issues of merit. Counsel also listed the issue relevant to this appeal in his no-merit letter and explained why the appeal is without merit. In addition, counsel averred that he served upon Appellant a copy of the application to withdraw, the "no-merit" letter, and a letter addressed to Appellant accompanying those documents. Thus, we will allow counsel to withdraw if, after our review, we conclude that the issue relevant to this appeal lacks merit.

We have discerned the following issue presented by PCRA counsel on behalf of Appellant in the *Turner*/*Finley* letter: (1) whether appellate counsel was ineffective under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Art. I, §9 and Art. V, §9 of the Pennsylvania Constitution for failing to comply with [Pa.R.A.P.] 2119(f), resulting in waiver of [Appellant's] sentencing claim upon appeal. Application to Withdraw, Exhibit A *Turner*/*Finley* Letter, at 3.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence

of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Rykard***, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Appellant's claim challenges the effective assistance of his trial counsel. Our Supreme Court has long stated that in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001).

We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong of the ***Pierce*** test, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the

particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

**Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987) (quoting **Commonwealth ex rel. Washington v. Maroney**, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. **Pierce**, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009) (citing **Commonwealth v. Sneed**, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. **Commonwealth v. Baker**, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). We are bound by the PCRA court's credibility determinations where there is support for them in the record.

***Commonwealth v. Battle***, 883 A.2d 641, 648 (Pa. Super. 2005) (citing ***Commonwealth v. Abu-Jamal***, 720 A.2d 79 (Pa. 1998)). Furthermore, claims of ineffective assistance of counsel are not self-proving. ***Commonwealth v. Wharton***, 811 A.2d 978, 986 (Pa. 2002).

The sole issue Appellant raised in his PCRA petition, and on appeal through the ***Turner/Finley*** letter, is that direct appeal counsel was ineffective for failing to include a Pa.R.A.P. 2119(f) statement in Appellant's appellate brief filed with this Court. Amended PCRA Petition, 12/30/15, at 1; ***Turner/Finley*** Letter at 3. Appellant contends that this error by direct appeal counsel resulted in waiver of Appellant's sentencing issue on direct appeal. ***Id***.

Our review of the certified record reflects that Appellant preserved the following sentencing issue in his Pa.R.A.P. 1925(b) statement filed in connection with his direct appeal:

> A. The trial court erred and abused its discretion by imposing a sentence that exceeded the Sentencing Guidelines without providing adequate reasons to justify the sentence and failing to take into account the Appellant's lack of any criminal record or personal circumstances of the Appellant, or testimony presented by his family at sentencing, while relying upon some impermissible factors that were presented at sentencing.

Pa.R.A.P. 1925(b) Statement, 7/1/13, at 1. In addition, our review further reflects that Appellant raised the following issue in his appellate brief filed with this Court on direct appeal:

> A. DID THE TRIAL COURT ERR IN IMPOSING A SENTENCE THAT EXCEEDED THE SENTENCING GUIDELINES LACKING

ADEQUATE REASONS TO JUSTIFY THE STATUTORY MAXIMUM WHICH DID NOT TAKE INTO ACCOUNT [APPELLANT'S] CIRCUMSTANCES AND REHABILITATIVE NEEDS BUT ONLY FOCUSED ON THE NATURE OF THE OFFENSE?

***Peralta***, 1846 EDA 2013 (unpublished memorandum at *9). Furthermore, Appellant's brief to this Court on direct appeal contained the following language at the beginning of the argument section pertaining to Appellant's sentencing issue:

> The Appellant asserts that the trial court committed errors and abused its discretion in imposing an aggregate sentence of fifteen (15) to thirty (30) years. That sentence manifestly exceeded the sentencing guidelines.
>
> 1. Concise statement of reasons relied upon in support of appeal.
>
> Appellant received an aggregate sentence of fifteen (15) to thirty (30) years. This sentence was compiled by sentencing the Appellant to the statutory maximum on every charge and then running each sentence consecutively to each charge that did not merge for sentencing.
>
> Appellant had no prior criminal record. In sentencing the Appellant to the statutory maximum on each charge, the trial court greatly exceeded the applicable range of the Sentencing Guidelines.
>
> A claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guidelines presents a substantial question and is reviewable on appeal. *See, Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999); *Commonwealth v. Eby*, 784 A.2d 2004 (Pa. Super. 2001).

Commonwealth's Answer to Amended PCRA Petition, 2/22/16, Exhibit B (Appellant's Brief on Direct Appeal) at 3-4.

In spite of the above cited language, in disposing of Appellant's sentencing issue, this Court stated:

In the present case, Appellant has failed to include in his brief a concise statement pursuant to Pa.R.A.P. 2119(f). The Commonwealth objects to Appellant's failure to include a Pa.R.A.P. 2119(f) statement, and argues that Appellant's sentencing claim is waived. We agree.

This Court has held:

> [W]hen the appellant has not included a Rule 2119(f) statement and the [Commonwealth] has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of Pa.R.A.P. 2119(f) *sua sponte, i.e.,* deny allowance of appeal. However, this option is lost if the [Commonwealth] objects to a 2119(f) omission. In such circumstances, this Court is precluded from reviewing the merits of the claim and the appeal must be denied.

**Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004); **see also Commonwealth v. Robinson**, 931 A.2d 15, 22 (Pa. Super. 2007).

In the present case, Appellant has failed to include in his brief a statement pursuant to Pa.R.A.P. 2119(f), and the Commonwealth has objected to the omission. Accordingly, we may not review the merits of Appellant's appeal. **Kiesel**, **supra**.[2]

> [2] Absent waiver, the record refutes Appellant's sentencing claim. The trial court fully explained the reasons it chose to deviate from the sentencing guidelines both at sentencing and again when denying Appellant's motion for sentence reconsideration. Appellant's true claim challenges the weight the trial court assigned legitimate sentencing factors. Such a challenge does not raise a substantial question. **See generally Commonwealth v. Griffin**, 804 A.2d 1 (Pa. Super. 2002).

**Peralta**, 1846 EDA 2013 (unpublished memorandum at *11-12).

- 15 -

Thus, it appears that this Court mistakenly concluded in the body of its memorandum disposing of Appellant's direct appeal that Appellant waived his sentencing issue due to a failure to include a Pa.R.A.P. 2119(f) statement in his brief. Nevertheless, this Court addressed the merits of the sentencing claim in footnote two and determined that it was refuted by the record. Accordingly, the underlying issue of Appellant's ineffective assistance of counsel claim, which hinges on the proposition that appellate counsel failed to include a Pa.R.A.P. 2119(f) statement in the appellate brief, lacks arguable merit. Moreover, in light of the fact that this Court addressed the sentencing issue in footnote two, Appellant cannot demonstrate any resulting prejudice. Hence, Appellant's ineffective assistance of counsel claim fails. Therefore, we can discern no error on the part of the PCRA court in refusing to grant relief.

Furthermore, upon our independent review, no relief is due, and the PCRA court's determination is supported by the record and free of legal error. Having determined that Appellant is not entitled to PCRA relief, we allow counsel to withdraw under the precepts of *Turner*/*Finley*.

Application to withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/8/2017