J-S70029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA

v.   :

RONALD A. SCOTT   :

Appellant   :   No. 610 MDA 2017

Appeal from the PCRA Order March 20, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000295-2009,
CP-36-CR-0000734-2010, CP-36-CR-0000736-2010,
CP-36-CR-0000739-2010, CP-36-CR-0000752-2010,
CP-36-CR-0001859-2013, CP-36-CR-0002081-2013,
CP-36-CR-0002083-2013, CP-36-CR-0002085-2013,
CP-36-CR-0002088-2013, CP-36-CR-0002229-2013,
CP-36-CR-0003563-2014, CP-36-CR-0003573-2014,
CP-36-CR-0003693-2014, CP-36-CR-0003795-2014,
CP-36-CR-0003796-2014, CP-36-CR-0003799-2014,
CP-36-CR-0003805-2014, CP-36-CR-0004108-2014,
CP-36-CR-0004544-2014, CP-36-CR-0004636-2009,
CP-36-CR-0005578-2012

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY SHOGAN, J.:        **FILED DECEMBER 08, 2017**

Ronald A. Scott ("Appellant") appeals from the March 20, 2017 order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. In addition, Appellant's counsel has filed a motion to withdraw as counsel and a no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1998) (*en banc*).

After careful review, we grant counsel's motion to withdraw and affirm the order of the PCRA court.

In its Pa.R.A.P. 1925(a) opinion to this Court, the PCRA court detailed the history of this case, which stems from Appellant's drug use and repeated parole and probation violations. In summary, Appellant entered guilty pleas on May 22, 2013, and January 27, 2015. Thereafter, on April 2, 2015:

> [Appellant] was sentenced on the 2012–2013 charges pursuant to his termination from Drug Court. He also stood for sentencing on the 2009–2010 PV convictions that were brought under the supervision of Drug Court, as well as the new charges from 2014. [Appellant] received an aggregate sentence of 15 to 30 years' [sic] incarceration, plus costs and restitution. (N.T., Sentencing at 21–22.) [Appellant] was given a Recidivism Risk Reductive Incentive (RRRI) sentence of 12-1/2 years, as he was RRRI eligible as to all offenses. *See* 61 Pa.C.S.A. §§ 4501–4512.

PCRA Court Opinion, 3/20/17, at 4–5 (footnote omitted). Appellant filed a post-sentence motion challenging the discretionary aspects of his sentence, which the trial court denied by order dated April 24, 2015. Appellant filed a timely notice of appeal. This Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied his petition for allowance of appeal. ***Commonwealth v. Scott***, 144 A.3d 199, 781 MDA 2015 (Pa. Super. 2016), *appeal denied*, 145 A.3d 164 (Pa. 2016).

Appellant timely filed a *pro se* PCRA petition on September 14, 2016, challenging trial counsel's assistance. PCRA counsel was appointed, and he filed an amended petition on December 13, 2016, renewing Appellant's ineffective assistance of counsel ("IAC") claims. The Commonwealth filed a

response, the PCRA court conducted an evidentiary hearing, and the parties filed briefs. On March 20, 2017, the PCRA court denied Appellant's petition. This appeal followed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

On July 26, 2017, PCRA counsel filed with this Court a motion to withdraw and a *Turner*/*Finley* letter. In the letter, counsel advised Appellant that he could represent himself or that he could retain private counsel. However, the letter erroneously stated that these rights were conditioned upon this Court granting counsel leave to withdraw. Consequently, in an abundance of caution, on July 27, 2017, this Court issued an order directing that Appellant be permitted to file a response to counsel's *Turner*/*Finley* "no merit" letter, either *pro se* or by privately retained counsel, within thirty days of the date of that order. Appellant filed a *pro se* response with this Court on September 15, 2017.

Prior to addressing the merits of Appellant's claims on appeal, we must ascertain whether counsel has fulfilled the procedural requirements for withdrawing his representation. *Commonwealth v. Daniels*, 947 A.2d 795, 797 (Pa. Super. 2008). This Court has listed the following conditions to be met by counsel in seeking to withdraw in a collateral appeal:

> Counsel petitioning to withdraw from PCRA representation must proceed ... under [*Turner*, *supra* and *Finley*, *supra* and] ... must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner

wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed pro se or by new counsel.

* * *

[W]here counsel submits a petition and no-merit letter that ... satisfy the technical demands of *Turner*/*Finley*, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

*Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted) (brackets in original).

In the present case, counsel complied with the requirements for withdrawal from a collateral appeal. In the motion filed with this Court, counsel alleged that he thoroughly reviewed the case, evaluated the issues, conducted an independent review of the record, and concluded there were no issues of merit. Counsel also listed the issues relevant to this appeal in his no-merit letter and explained why the appeal is without merit. In addition, counsel averred that he sent Appellant a copy of the motion to withdraw and the no-merit letter. Thus, we will allow counsel to withdraw if, after our review, we conclude that the issues presented lack merit.

PCRA counsel presents the following claims on behalf of Appellant:

1. Counsel was ineffective for not seeking a plea agreement;

2. Counsel was ineffective for coercing [Appellant] to plead guilty;

3. Counsel was ineffective by failing to show any interest in [Appellant's] case, thus conveying to [Appellant] that his situation was hopeless and that he [had] no choice other than to plead guilty.

*Turner*/*Finley* Letter at unnumbered 6. In addition, in his *pro se* response filed with this Court, Appellant asserts that PCRA counsel was ineffective for failing to independently review or raise the claims Appellant included in his *pro se* PCRA petition: (1) counsel's failure to present a viable defense; (2) counsel's failure to investigate the case; (3) counsel's failure to properly consult with [Appellant] concerning the case; and (4) the Commonwealth's lack of jurisdiction "to Arrest, Charge, or Convict [Appellant] of any Crime under its present Constitution." Response to Order, 9/15/17, at 1–2.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080,

1084 (Pa. Super. 2014). Furthermore, our Supreme Court has long stated that in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001).

We have reviewed the parties' filings, the relevant law, the certified record before us on appeal, and the thorough opinion of the PCRA court dated March 20, 2017. We conclude that each IAC claim raised in the amended petition lacks merit and the PCRA court's well-crafted opinion adequately addresses those claims. Accordingly, we affirm on the basis of the PCRA court's opinion and adopt its reasoning as our own.[1]

As for the IAC claims Appellant raised in his *pro se* petition and reiterated in his response to this Court, we observe that Appellant's argument amounts to mere allegations of PCRA counsel's ineffective assistance and lacks any discussion of the three prongs of ineffective assistance set forth in *Pierce*. As we have often stated, claims of ineffective assistance of counsel are not self-proving. *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of

---

[1] The parties are directed to attach a copy of the March 20, 2017 opinion in the event of further proceedings in this matter.

ineffective assistance, on all three prongs of the ineffectiveness standard...."

***Commonwealth v. D'Amato***, 856 A.2d 806, 812 (Pa. 2004). "[A]n underdeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief." ***Commonwealth v. Bracey***, 795 A.2d 935, 940 n. 4 (Pa. 2001). Accordingly, Appellant's undeveloped claim of PCRA counsel's ineffective assistance fails.

Appellant's claim that the Commonwealth lacked jurisdiction to prosecute him also fails. Appellant's arrests, charges, and convictions stem from his multiple violations of the Pennsylvania Crimes Code. Thus, the Commonwealth had the authority to prosecute Appellant. ***See*** 18 Pa.C.S. § 102(a)(1) ("[A] person may be convicted under the law of this Commonwealth of an offense committed by his own conduct . . . for which he is legally accountable if . . . the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth. . ."").

Motion to withdraw as counsel granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/10/2017</u>

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA : Nos. 0295-2009, 4636-2009, 0734-2010,
                                          :    0736-2010, 0739-2010, 0752-2010,
                                          :    5578-2012, 1859-2013, 2081-2013,
             v.                        :    2083-2013, 2085-2013, 2088-2013,
                                          :    2229-2013, 3563-2014, 3573-2014,
                                          :    3693-2014, 3795-2014, 3796-2014,
                                          :    3799-2014, 3805-2014, 4108-2014
RONALD ANDREW SCOTT, JR.       :    4544-2014

OPINION

BY:   ASHWORTH, J., MARCH 20, 2017

Ronald Andrew Scott, Jr., has filed an amended petition pursuant to the Post

Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46. For the reasons set forth

below, this amended petition will be denied following a hearing.

I.    **Procedural Background**

The relevant facts and procedural history may be summarized as follows. In

2012 and 2013, Scott was charged with criminal offenses at the following dockets:

5578-2012 (theft of a motor vehicle); 1859-2013 (theft by deception); 2081-2013

(forgery (two counts), access device fraud (two counts)); 2083-2013 (forgery, access

device fraud, theft by unlawful taking); 2085-2013 (forgery, access device fraud (two

counts), theft by unlawful taking); and 2088-2013 (forgery, access device fraud, theft by

unlawful taking) (the 2012-2013 convictions). Scott applied for acceptance into the

Lancaster County Court of Common Pleas Adult Drug Court Program.[1] After completion of a drug and alcohol assessment and review by the Drug Court Team, Scott was accepted into the Drug Court Program and received a notice to appear before the undersigned to enter a guilty plea to the 2012-2013 charges and commence participation. Accordingly, on May 21, 2013, as part of his acceptance into Drug Court, Scott entered a plea of guilty to all of the charges at the above-referenced docket numbers. Sentencing was deferred pending Scott's successful completion of the treatment court.

At the same time, Scott also appeared before this Court for a parole and probation violation hearing on the following dockets: 0295-2009 (theft by deception); 4636-2009 (theft by unlawful taking); 0734-2010 (access device fraud); 0736-2010 (access device fraud); 0739-2010 (use of stolen credit cards (12 counts)); and 0752-2010 (access device fraud (three counts)) (the PV convictions). Scott was found in violation of his parole and probation and was recommitted to serve the unexpired balance of his parole sentences. It was further ordered that the periods of probation on

---

[1]The Drug Court Program is a post-plea deferred sentencing program. It provides the participant an opportunity to pursue treatment for his or her addiction(s), while productively addressing associated legal problems. Participants have frequent contact with the undersigned as the Drug Court Judge, with probation officers, and treatment providers. They are required to complete a Four Phase program culminating with graduation. The Phase program was designed to be completed in one year. Following graduation, a participant, when appropriate, may petition the court to have the charges dismissed, and/or reduced or record expunged.

Participants are expected to complete and participate in numerous pro-social, treatment-oriented activities. These include AA/NA meetings, group and individual therapy, weekly court appearances, probation appointments, and urine testing. Participants receive sanctions if they violate program rules or fail to achieve Phase requirements. Possible violations include missed appointments, failed or adulterated urine tests, new arrests/charges, and lack of participation in treatment. Sanctions are imposed relative to the violation, and include demotion in Phase, fines, curfew restrictions, incarceration, and termination from the Drug Court Program.

each docket remain. Finally, Scott was ordered to successfully complete the Drug Court Program.

Scott was paroled on May 21, 2013, to a representative of the White Deer Run-Cove Forge Drug and Alcohol Rehabilitation Center. He completed his treatment there on June 27, 2013, and entered the Gatehouse for Men the same day.

On July 16, 2013, Scott pleaded guilty on Docket No. 2229-2013 (access device fraud (three counts), receiving stolen property), and that docket was also brought into Drug Court. On August 1, 2013, Scott was unsuccessfully discharged from the Gatehouse for altering a prescription. Following his discharge from the Gatehouse, Scott began outpatient treatment at Human Services Associates (HSA) on August 2, 2013. Over the next several months, Scott successfully advanced into Phase III of the Drug Court Program.

On April 9, 2014, however, Scott tested positive for cocaine and denied use. The sample was sent to the laboratory and was confirmed positive on April 11, 2014. Scott further failed to report to an appointment with his probation officer on April 11, 2014. A warrant was issued for Scott on April 29, 2014 for failure to report for a Drug Court review hearing. On May 18, 2014, Scott was arrested on new charges, and his bench warrant, and was placed in the Lancaster County Prison (LCP).

Scott was released from LCP on June 3, 2014. Scott again missed an appointment with his probation officer on June 9, 2014. Because Scott failed to report for a Drug Court review hearing on June 17, 2014, a bench warrant was issued for his arrest. He was again arrested on warrants for new charges on July 15, 2014.

3

The new 2014 criminal offenses were lodged at the following dockets: 3563-2014 (theft by unlawful taking, access device fraud (two counts), forgery); 3573-2014 (theft by unlawful taking, access device fraud (two counts), forgery (five counts)); 3693-2014 (theft by unlawful taking, access device fraud (two counts)); 3795-2014 (retail theft); 3796-2014 (access device fraud); 3799-2014 (access device fraud); 3805-2014 (access device fraud); 4108-2014 (access device fraud (two counts), theft of property); and 4544-2014 (theft by unlawful taking, access device fraud (two counts), forgery (two counts)) (the 2014 charges). As a result of these new criminal charges, Scott was discharged from the Drug Court Program on August 5, 2014. A *capias* was filed on November 6, 2014, charging Scott with violating his parole and probation by failing to successfully complete the Drug Court Program.

On January 27, 2015, Scott pleaded guilty to the 2014 charges. (Notes of Testimony (N.T.), Guilty Plea at 25.) At the same time, a probation and parole violation hearing was held on the following dockets: 0295-2009; 4636-2009; 0734-2010; 0736-2010; 0739-2010; and 0752-2010. At that time, violations were found. (Id. at 26-27.) Sentencing was deferred pending the completion of a pre-sentence investigation (PSI) by the Office of Adult Probation and Parole Services. (Id. at 14-15, 25.)

On April 2, 2015, Scott was sentenced on the 2012-2013 charges pursuant to his termination from Drug Court. He also stood for sentencing on the 2009-2010 PV convictions that were brought under the supervision of Drug Court, as well as the new charges from 2014. Scott received an aggregate sentence of 15 to 30 years'

4

incarceration, plus costs and restitution.[2] (N.T., Sentencing at 21-22.) Scott was given

a Recidivism Risk Reductive Incentive (RRRI) sentence of 12-1/2 years, as he was

RRRI eligible as to all offenses. See 61 Pa.C.S.A. §§ 4501-4512.

On April 13, 2015, Scott filed a timely motion to modify sentence in which he

claimed the sentences, individually, and when considered as an aggregate, constituted

a manifest abuse of discretion and were clearly unreasonable considering the mitigating

circumstances presented at sentencing and in the PSI. By Order dated April 24, 2015, I

denied Scott's challenge to the discretionary aspect of his sentence.

A timely notice of appeal to the Superior Court of Pennsylvania from the

judgment of sentence was filed on May 4, 2015.[3] (See No. 781 MDA 2015.) A three-

judge panel of the Superior Court affirmed the judgment of sentence in an unpublished

memorandum filed on March 15, 2016. See Commonwealth v. Scott, 144 A.3d 199,

2016 WL 1033482 (Pa. Super. 2016). Scott's petition for allowance of appeal was

---

[2]Each misdemeanor 3 charge received a sentence of restitution plus costs, with no period of incarceration. For all of the other offenses, whether they were felony 3s or misdemeanor 1s, Scott received a sentence of one to two years' incarceration in the state correctional facility. All sentences on each docket were concurrent. Also Docket Nos. 5578-2012 and 1859-2013 were concurrent to one another, as were Nos. 3795-2014 and 3693-2014, as well as Nos. 3796-2014, 3799-2014, and 3805-2014, but they were collectively consecutive to each other and the other dockets. The sentences on the PV convictions at Nos. 0295-2009, 4636-2009, 0734-2010, and 0736-2010 were concurrent to each other but also collectively consecutive to the other dockets. The remaining dockets were made consecutive. (N.T., Sentencing at 17-21.)

[3]Pursuant to this Court's directive, Scott furnished a concise statement of matters complained of on appeal which challenged the discretionary aspect of his sentence in the following ways: (1) the "Court abused its discretion in giving [Scott] consecutive sentences on all dockets including his probation/parole violations dockets, while ignoring all mitigating factors"; (2) the "Court abused its discretion in sentencing [Scott] to an aggregate of 15-30 years in a state correction [sic] institution"; and (3) the "Court erred in sentencing [Scott] outside of the sentencing guidelines." (See Statement of Errors at ¶¶ 1-3.)

5

denied by the Supreme Court of Pennsylvania on July 27, 2016. *See* Commonwealth *v. Scott*, 145 A.3d 164 (Pa. 2016). Scott was represented at his January 27, 2015 guilty plea, April 2, 2015 sentencing, and on direct appeal by court-appointed counsel, Stephen W. Grosh, Esquire.

On September 14, 2016,[4] Scott, acting *pro se*, filed a timely[5] motion for post conviction collateral relief. In this pleading, Scott challenged the effective assistance of his trial counsel. Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, Vincent J. Quinn, Esquire, was appointed to represent Scott on his collateral claims and was granted leave to file an amended petition.

On December 13, 2016, an amended motion was filed by PCRA counsel which raises the following issues: (1) whether plea counsel was ineffective for failing to seek a plea agreement from the Commonwealth; (2) whether plea counsel coerced Scott to

---

[4]The pleading is deemed filed on the date of mailing, September 14, 2016, rather than the date of docketing, September 16, 2016, pursuant to the "prisoner mailbox rule." *See* Commonwealth v. Crawford, 17 A.3d 1279, 1281 (Pa. Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing.").

[5]Pursuant to 42 Pa.C.S.A. § 9545(b), a petition for relief must be filed within one year of the date the judgment of sentence becomes final. For purposes of the PCRA, "a judgment becomes final at the conclusion of direct review, *including discretionary review in the Supreme Court of the United States . . . or at the expiration of time for seeking the review*." 42 Pa.C.S.A. § 9545(b)(3) (emphasis added). Here, Scott's petition for allowance of appeal was denied by the Pennsylvania Supreme Court on July 27, 2016. As Scott did not file a petition for writ of *certiorari* with the United States Supreme Court, his judgment of sentence became final on October 25, 2016, when the period for filing a petition expired. *See* U.S. Sup.Ct. Rule 13, 28 U.S.C.A. (providing "[a] petition for writ of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when filed with the Clerk within 90 days after entry of the order denying discretionary review."). *See* also Commonwealth v. Fairiror, 809 A.2d 396, 398 (Pa. Super. 2002)(statute of limitations for filing petition for post conviction relief did not begin to run until defendant's period for filing petition for *certiorari* in the United States Supreme Court lapsed). Scott filed his *pro se* PCRA petition on September 14, 2016; as a result, it is timely.

6

plead guilty by advising Scott that he had no choice other than to plead guilty; and (3) whether plea counsel expressed little interest in Scott's case, thereby leaving Scott with the impression that he had no choice other than to plead guilty. (*See* Amended PCRA Petition at ¶¶ 16(A), 16(B), and 16(C).) The Commonwealth filed a response to the amended petition on January 4, 2017, conceding the need for an evidentiary hearing on these claims. (*See* Commonwealth's Response to Defendant's Amended PCRA Petition at ¶ 9.) Accordingly, a hearing was held on February 6, 2017, at which time the Court heard testimony from Defense Attorney Grosh, Petitioner Scott, and Assistant District Attorney Cheryl Ondechek. Briefs having been filed by the parties, this matter is now ripe for disposition.

## II.    Eligibility for PCRA Relief

Initially, I note that "[t]he entry of a guilty plea constitutes a waiver of all defenses and defects except claims of lack of jurisdiction, invalid guilty plea, and illegal sentence." **Commonwealth v. Kennedy,** 868 A.2d 582, 593 (Pa. Super. 2005). Scott has not challenged the jurisdiction of this Court or the legality of his sentence. Scott does dispute, however, the validity of his guilty plea.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." **Commonwealth v. Hickman,** 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). *See also* 42 Pa.C.S.A. § 9543(a)(2)(iii). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea

7

depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Id. (citations and internal quotation marks omitted).

In assessing the voluntariness of a guilty plea, our Superior Court has noted that "[t]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty; rather [a]ll that is required is that [the defendant's] decision to plead guilty be knowingly, voluntarily and intelligently made." Commonwealth v. Brown, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citations and internal quotation marks omitted).

> With regard to the voluntariness of a plea, a guilty plea colloquy must affirmatively demonstrate the defendant understood what the plea connoted and its consequences. Once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him.

Commonwealth v. Willis, 68 A.3d 997, 1002 (Pa. Super. 2013) (citations and internal quotation marks omitted).

In determining whether a defendant entered into a plea of guilty knowingly, voluntarily and intelligently, the PCRA court "is free to consider the totality of the circumstances surrounding the plea, . . . including, but not limited to, transcripts from other proceedings, 'off-the-record' communications with counsel, and written plea agreements." Commonwealth v. Allen, 557 Pa. 135, 146-47, 732 A.2d 582, 588-89 (1999). Moreover, "[a] defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled." Brown, 48 A.3d at 1277.

8

## III. Discussion

Scott claims his defense counsel unlawfully induced him to enter into a plea. In support of this argument, he avers that: (1) Attorney Grosh failed to seek a plea agreement with the Commonwealth; (2) Attorney Grosh coerced Scott to plead guilty by advising Scott that he had no choice other than to plead; and (3) Attorney Grosh expressed little interest in his case, thereby leaving Scott with the impression that he had no choice other than to plead guilty to the new 2014 charges.[6] (See Amended PCRA Petition at ¶¶ 16(A), 16(B), and 16(C).) For the reasons that follow, Scott's claims of ineffective assistance of counsel must fail.

Attorney Grosh testified first at the evidentiary hearing. He explained that approximately 50 percent of his practice is criminal work. (N.T., Evidentiary Hearing at 14.) During his 14 years as a criminal defense attorney, Attorney Grosh has represented well over one hundred defendants through the plea and sentencing process. (Id.) Prior to starting his own private practice, Attorney Grosh worked in the Public Defender's Office and, while there, was the representative on the Drug Court Team.[7] (Id. at 14-15.)

---

[6]The charges docketed in the years 2009 and 2010 were admitted into Drug Court after probation/parole violations. Scott further pleaded guilty to the 2012 and 2013 charges, and those dockets were admitted into Drug Court also. Again, the Drug Court Program is a post-plea deferred sentencing program. Scott, therefore, was required to plead guilty to gain admission to the Program. The only remaining charges which had not been previously addressed were the 2014 dockets.

[7]The Drug Court Team, led by the undersigned, is composed of members of several different county and court agencies, including an Assistant District Attorney, a Public Defender, a Drug Court Coordinator, a drug and alcohol treatment provider, a Drug and Alcohol Commission case manager, and multiple probation officers.

Attorney Grosh testified he met with Scott at the prison on "multiple occasions," in addition to seeing him at the several preliminary hearings on the 2014 dockets. (N.T., Evidentiary Hearing at 18-19; see also Id. at 10 (Attorney Grosh had "several meetings" with Scott at LCP).) At those meetings, Attorney Grosh talked to Scott about the different cases pending before the court, the status of those cases, "his options" regarding going to trial or entering a plea, "whether or not [they] received any offer and what it [was] he wanted to do." (Id. at 10-11, 19.) After discussing the case with ADA Ondechek, Grosh informed Scott that there would be no negotiated guilty plea offer by the Commonwealth.[8] (Id. at 11.) He further discussed with Scott his right to go to trial on the 2014 open charges. (Id.) Although Grosh reviewed the maximums for each charge with Scott, Grosh testified that given the sheer volume of dockets "it was really almost impossible for [him] to give [Scott] an actual number" of a possible aggregate sentence. (Id. at 12.) Grosh was able to advise Scott that his hope of less than a five-year sentence was "really very unrealistic." (Id. at 12-13.)

Attorney Grosh further testified that he explained to Scott that it was his decision to plead guilty, both at the preliminary hearing and later during his visits at LCP. (N.T., Evidentiary Hearing at 17.) Scott knew he had two options: go to trial or take an open plea. (Id. at 17.) While Scott "obviously had a choice of going to trial . . . that was

---

[8]It is Drug Court protocol that if a participant is discharged from the program and does not graduate there will be no negotiated agreement offered by the Commonwealth at the time of sentencing. (N.T., Evidentiary Hearing at 15.) Despite this, Attorney Grosh did talk to ADA Ondechek regarding a possible plea agreement or a sentence of State Intermediate Punishment (SIP) and was informed that both of those options were "not on the table" because (1) Scott absconded from his treatment center and picked up the new charges while a participant in Drug Court, (2) the new 2014 charges were voluminous, and (3) Scott was ultimately discharged from treatment court. (Id. at 16-17.)

10

nothing that he ever had represented that he was interested in doing," and, in Attorney Grosh's opinion, "it wasn't a very good option for him." (Id. at 17-18.) Attorney Grosh stated there was "absolutely no question" in his mind that it was Scott's decision to plead guilty to the 2014 charges. (Id. at 17.)

Attorney Grosh testified that he reviewed the written guilty plea colloquy with Scott and assisted him in answering the questions. (N.T., Evidentiary Hearing at 20-21; see also Commonwealth Ex. 1.) Although there was a two-month delay between when the colloquy was completed and when the plea hearing ultimately took place, Attorney Grosh testified that "Scott never wavered on what it [was] he wanted to do, not once." (Id. at 22.) On that colloquy, Scott indicated the following: he understood he did not have to plead guilty; he was aware there was no plea agreement; he was not threatened or forced to plead guilty; it was his decision to plead guilty; he had had sufficient time to review the colloquy; his counsel explained everything in the form to him; and he signed the form with a full understanding of his rights and was voluntarily pleading guilty. (Id. at 22-23; see also Commonwealth Ex. 1.)

Scott took the stand next and, to an extent, his testimony was consistent with Attorney Grosh's testimony. Scott conceded that there were at least two separate preliminary hearings on the 2014 charges during which time he met with Attorney Grosh,[9] in addition to one prison visit in November 2014, when the guilty plea colloquy

---

[9]The record suggests that Scott had six separate preliminary hearings: (1) No. 3573-2014, on August 1, 2014, with Magisterial District Judge (MDJ) Bruce A. Roth, Esq.; (2) No. 3563-2014, on August 1, 2014 with MDJ John C. Winters; (3) No. 3693-2014, on August 6, 2014 with MDJ Kelly S. Ballentine, Esq.; (4) Nos. 3805-2014, 3799-2014, 3796-2014, and 3795-2014, on August 14, 2014, with MDJ Mary M. Sponaugle, Esq.; (5) No. 4108-2014, on September 4, 2014, with MDJ Stuart J. Mylin; and (6) No. 4544-2014 on September 24, 2014, with MDJ Ballentine.

11

was executed. (N.T., Evidentiary Hearing at 27-29.) Scott testified that during the prison visit they discussed his options with respect to the 2014 charges, and further that his sentencing expectations of a three-and-one-half-to-seven-year sentence were "unrealistic." (Id. at 29-30.) Scott stated that at that time he asked Attorney Grosh to go to the Commonwealth and try to get a plea agreement. (Id. at 30.) He further testified, contrary to Attorney Grosh's testimony, that there was no talk at that time about contesting the charges and going to trial. (Id. at 30-31.)

Scott candidly told the PCRA Court that he "was guilty" of the 2014 charges, that he pleaded guilty because he "knew [he] was guilty" (N.T., Evidentiary Hearing at 31-32), and that he shared this knowledge of his guilt with his attorney. (Id. at 32-33.) Scott noted that he had simply not wanted to plead guilty without an agreement with the Commonwealth on the aggregate sentence. (Id. at 31-32.)

On cross-examination, Scott acknowledged answering the questions on the written guilty plea colloquy form and signing the document. (N.T., Evidentiary Hearing at 33.) On that form, the total maximum possible sentence of 174 years' incarceration and a potential maximum fine of $430,000.00 were identified, which Scott confirmed. (Id.)

Scott testified that between filling out the colloquy form in November 2014 and the guilty plea hearing in January 2015, he wrote Attorney Grosh multiple times indicating, "I don't think that this should go down like that," and that other options should be discussed. (N.T., Evidentiary Hearing at 34.) Scott acknowledged never actually telling his attorney in those communications that he did not want to go through with the

12

plea.[10] (Id. at 34-35.) When Scott saw Attorney Grosh at his scheduled guilty plea/ sentencing hearing in January, he never told him that he had changed his mind and that it was not his intention to plead guilty to the 2014 charges. (Id. at 35.) Moreover, when questioned during the oral guilty plea colloquy, Scott did not tell the Court that he did not want to plead guilty. (Id. at 36.)

With respect to the written guilty plea colloquy, Scott testified he was informed he did not have to plead guilty and that it was his voluntary decision to plead guilty. (N.T., Evidentiary Hearing at 36.) He further acknowledged that this was with full knowledge that there was no plea agreement with the Commonwealth. (Id. at 36-37.) Scott denied being forced to plead guilty, and stated it was his decision to plead guilty of his own free will. (Id. at 37.) Moreover, between pleading guilty on January 27, 2015, and being sentenced on April 2, 2015, Scott conceded that he never indicated to his attorney that he wanted to withdraw his guilty plea. (Id. at 38.) Nor did Scott tell Attorney Grosh or me at the sentencing hearing that he wanted to withdraw his plea.

---

[10]PCRA Counsel introduced "request forms" sent from Scott to Attorney Grosh while he was at LCP. (N.T., Evidentiary Hearing at 40-41; Defendant's Ex. 2.) Three of these documents, dated January 3, 2014, September 28, 2014, and November 13, 2014, preceded the meeting with Attorney Grosh at LCP on November 25, 2014. (Id. at 42.) In none of these letters did Scott state that he did not want to plead guilty, although he did express some uncertainty about taking the plea in his letter of November 13, 2014. (Id. at 43; see Defendant's Ex. 2, Nov. 13, 2014 Request Form ("[A]re you under the insumption [sic] that I'm taking an open plea or is there a deal on the table because I would like to know so I can prepare myself").) However, counsel then met with Scott less than two weeks later at which time, after discussing the matter, Scott completed the guilty plea colloquy form. (Id.) There was only one letter sent by Scott between the time they met at LCP to complete the colloquy form on November 25, 2014, and the date of the guilty plea hearing on January 27, 2015. That letter is dated January 13, 2015, and suggests only that Scott "may have" information regarding a homicide which might "interest some people," and could be a "benefit" to his case. (See Defendant's Ex. 2, Jan. 13, 2015 Request Form.) There is no mention of the open guilty plea scheduled for January 27, 2015.

13

To refute Scott's claims of ineffective assistance of counsel, the Commonwealth introduced the testimony of Assistant District Attorney Cheryl Ondechek, who serves on the Drug Court Team. (N.T., Evidentiary Hearing at 46.) ADA Ondechek has been the representative for the District Attorney's Office since the inception of the treatment court in 2005. (Id.) She testified that it has always been her personal policy not to offer a plea agreement to any Drug Court participant who has "flunked out" of the program, particularly when there are a large number of charges involved. (Id. at 47.)

ADA Ondechek had a specific recollection of discussing with Attorney Grosh a possible plea in this case, and of her final decision that no plea offer would be forthcoming "under any circumstance," and further that she would be seeking consecutive sentences for Scott. (N.T., Evidentiary Hearing at 47, 49.) The notes in her file confirmed that there would not be any volume discount because there were simply too many charges involved in this case where the participant had received multiple chances at rehabilitation. (Id. at 47, 48.)

As noted above, "once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." Willis, 68 A.3d at 1002. Scott has not carried his burden in this case.

I begin my analysis as to the voluntary, knowing and intelligent nature of Scott's plea by examining the totality of the circumstances surrounding the plea. The record establishes that a lengthy and thorough guilty plea colloquy was conducted. Scott was advised of the charges against him and the elements of those offenses as defined by the Crimes Code and the Pennsylvania Standard Jury Instructions (Criminal) were explained to him. (N.T., Guilty Plea at 6-9.) Scott was also advised that by

14

pleading guilty he was waiving his rights to a jury trial, the presumption of innocence, and other relevant attributes of procedural due process. (Id. at 5.) He acknowledged that he understood that he did not have to plead guilty, that he was presumed innocent until proven guilty, that he had the right to a jury trial, and that if he went to trial the Commonwealth must prove all of the elements of the charges beyond a reasonable doubt. (Id.)

The maximum sentences and sentencing guidelines for each charge were also reviewed with Scott during the colloquy. (N.T., Guilty Plea 9-12.) Scott stated that he understood that the maximum sentence, if all charges were sentenced consecutively, would be 174 years in jail and a fine of $430,000.00. (Id. at 12.) Scott further acknowledged that he was entering an open or straight plea, which he understood to mean that there was no agreement between Scott, his attorney, the Commonwealth and the Court as to the sentence to be imposed. (Id. at 14.)

In addition to the colloquy in open court, I reviewed with Scott the 7-page, 77-question written guilty plea "long form" completed by defense counsel. (N.T., Guilty Plea at 16.) In this document, Scott manifested his understanding of the offenses against him, the maximum sentences and the procedural due process rights waived by a guilty plea. (Id.) He indicated that he reviewed the colloquy form with his attorney and signed it. (Id.) Scott had no questions of his attorney or of the Court regarding the form. (Id.)

Lastly, I also reviewed the factual bases of the plea, as summarized by ADA Ondechek. (N.T., Guilty Plea at 16-24.) Scott admitted to the facts recited by the

15

prosecutor which formed the bases for the charges (Id. at 17-24); thus, defeating a claim of innocence.

Based upon the representations by Scott, his attorney and the Commonwealth, the guilty plea tendered by Scott was accepted. (N.T., Guilty Plea at 25.) On review, considering all the circumstances attendant to the plea, including the adequacy of the plea colloquy, and Scott's responses therein, and the representations by defense counsel, the guilty plea was knowing, voluntary and intelligent, and was properly accepted.

Scott, however, claims that his guilty plea is nonetheless invalid based on the ineffective assistance of counsel. Specifically, Scott now contends that, despite what was said during the oral colloquy and what was specifically spelled out in the written colloquy, it was not his intention to plead guilty and that counsel unlawfully induced him to plead guilty by not procuring a plea agreement from the Commonwealth, and by failing to advise him of other options besides pleading guilty.

Scott testified at the PCRA Hearing that he was guilty of the 2014 charges, that he wanted to plead guilty to the charges, and that he ultimately did plead guilty because he was guilty. (N.T., Evidentiary Hearing at 31-32.) Only he now claims he did not want to plead guilty without an agreement from the Commonwealth. (Id.) Scott stated he asked Attorney Grosh to discuss a possible deal with the Commonwealth (Id. at 30), and ADA Ondechek confirmed that a conversation with Attorney Grosh about a plea agreement took place. (Id. at 47.) However, there was no deal. The Commonwealth was opposed to any agreement on the 2014 charges because Scott had been discharged from Drug Court, and because of the sheer volume of crimes he committed

16

while participating in the treatment court. (Id.) Thus, although Scott wanted a plea agreement on his charges, that was not an option. And Attorney Grosh told Scott that there was no plea agreement option. (Id. at 11.)

Attorney Grosh testified that he discussed with Scott his other option of going to trial. (N.T., Evidentiary Hearing at 17-18) However, Scott never expressed an interest in doing so. (Id.) Nor did Scott testify at the PCRA Hearing that had he been informed of his right to trial he would have exercised that right. To the contrary, Scott testified quite candidly that he was guilty of the 2014 charges and that he wanted to enter a plea; hence, not go to trial.

At the plea hearing, Scott informed the Court that it was his decision to waive a jury trial and plead guilty, and he further indicated on the written colloquy form that no promises, threats or guarantees had been made to or against him to force him to plead guilty. (N.T., Guilty Plea at 5; Guilty Plea Colloquy at ¶¶ 49-52.) Scott also conceded at the time of this plea that he had spent sufficient time with counsel and was satisfied with his representation. (N.T., Evidentiary Hearing at 37; Guilty Plea Colloquy at ¶¶ 76-77.) Thus, the only evidence suggesting that Scott's guilty plea was induced by counsel's alleged lack of attention and failure to inform Scott of other options to pleading guilty is Scott's proffered testimony, which directly contradicts his own statements made during the oral plea colloquy and on the written colloquy.

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. . . . A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy. . . .

17

> . . .
>
> A criminal defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel. . . .

Commonwealth v. Pollard, 832 A.2d 517, 523-24 (Pa. Super. 2003) (citations omitted). As Scott's current claims are at odds with the testimony he provided at his guilty plea and are simply not credible,[11] they must be rejected.

Finally, Scott has failed to establish the prejudice prong of the ineffectiveness test. Given the evidence in this case, Scott cannot establish that there is a reasonable probability that the outcome of his case would have been different but for counsel's alleged ineffectiveness in failing to devote sufficient interest in his case, and in failing to advise him of other options besides pleading guilty. See Chmiel, 612 Pa. at 362, 30 A.3d at 1127-28. For had Scott proceeded to trial, there was overwhelming evidence to support convictions on the multiple dockets, including photo and video surveillance from various retail locations (Weis Markets, Walmart, Giant, and CVS) (see N.T., Guilty Plea at 17-24 ), a positive identification of Scott by a theft victim (Id. at 19), an apprehension of Scott by Boscov's loss prevention officer while in the act of committing a retail theft (Id. at 20), and finally a confession by Scott of illegal purchases at Wawa and Weis using stolen credit cards. (Id. at 22-23.) There was no lack of evidence linking Scott to the crimes. Following his conviction, Scott would have received the same sentence, or perhaps even a greater sentence. Because the outcome of the proceedings would

---

[11]The Commonwealth asks that I take judicial notice that all of the 2014 dockets involved in this PCRA proceeding include crimes of dishonesty. As such, it argues that Scott, "who is practiced in the art of deception, is not credible in his present claims." (See Commonwealth's Brief at 10.) I concur.

18

have been no different, Scott fails to meet the prejudice prong of the ineffectiveness test. Accordingly, Scott's PCRA claims lack merit.

## IV. Conclusion

For the reasons set forth above, Scott's amended petition for post conviction collateral relief must be denied.

Accordingly, I enter the following:

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
# CRIMINAL

COMMONWEALTH OF PENNSYLVANIA

v.

RONALD ANDREW SCOTT, JR.

: Nos. 0295-2009, 4636-2009, 0734-2010,
: 0736-2010, 0739-2010, 0752-2010,
: 5578-2012, 1859-2013, 2081-2013,
: 2083-2013, 2085-2013, 2088-2013,
: 2229-2013, 3563-2014, 3573-2014,
: 3693-2014, 3795-2014, 3796-2014,
: 3799-2014, 3805-2014, 4108-2014
: 4544-2014

## ORDER

AND NOW, this 20th day of March, 2017, upon consideration of Ronald Andrew Scott's amended petition for post conviction collateral relief, the briefs filed by the parties, and after a hearing in this matter, it is hereby ORDERED that said amended petition is DENIED.

Pursuant to Pa. R.Crim.P. 908(E), this Court advises Scott that he has the right to appeal from this Order. Scott shall have 30 days from the date of this final Order to appeal to the Superior Court of Pennsylvania. Failure to appeal within 30 days will result in the loss of appellate rights.

It is further ORDERED that Scott shall have the right, if indigent, to appeal *in forma pauperis* and to proceed with assigned counsel as provided in Pa.R.Crim.P. 122.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

Copies to:   James M. Reeder, Assistant District Attorney
             Vincent J. Quinn, Esquire

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a true and correct copy of the foregoing Motion to Withdraw as Counsel upon the persons set forth below and in the manner indicated:

By First Class Mail, Postage Pre-Paid:

Craig Stedman, Esquire
Office of the District Attorney
Lancaster County Courthouse
50 North Duke Street
P.O. Box 83480
Lancaster, PA 17608-3480


Ronald A. Scott, Jr.
#LZ 4590
SCI--Smithfield
P.O. Box 999
Huntingdon, PA 16652


EAGER, STENGEL, QUINN, SOFILKA & BABIC

Date: 7/25/17

By: _____
Vincent J. Quinn
Attorney for Petitioner
Atty. I.D. No. 26113
1347 Fruitville Pike
Lancaster, PA 17601
(717) 290-7971