J-S47008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALVIN HENRY GRASTY | : | |
| | : | |
| Appellant | : | No. 3074 EDA 2023 |

Appeal from the PCRA Order Entered November 1, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0007239-2016

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.:                     **FILED JUNE 13, 2025**

Alvin Henry Grasty ("Grasty") appeals from the order denying, without a hearing, his first counseled petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  For the reasons discussed below we affirm, albeit for different reasons than those the PCRA court stated.[2]

We take the underlying facts in this matter from this Court's decision on direct appeal in which Grasty appealed from his judgment of sentence imposed following his jury convictions for first-degree murder and offenses related to the shooting death of Anthony Moore (the "victim").  On April 30, 2016,

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (stating it is well settled where the result is correct, we may affirm a lower court's decision on any ground whether relied upon by that court).

Grasty, co-defendant Erikk Wright ("Wright"), and several other men were in the Gold Room bar in Chester, Pennsylvania. Two men from the rival areas of Highland Gardens and Bennett Homes began to fight. The victim, who was from Bennett Homes, left the bar around this time. Grasty, Wright, and several other cohorts, all of whom were from Highland Gardens, followed the victim. As he approached an intersection, the victim tried to run from his pursuers. Grasty and Wright drew guns and opened fire at the victim, who fell to the ground. Surveillance cameras from both the Gold Bar and another nearby business captured the shooting. Grasty, Wright, and the other men fled in a car. *See Commonwealth v. Grasty*, 239 A.3d 97 (Pa. Super. 2020) (unpublished memorandum at *1).

Responding police officers found the victim bleeding from multiple gunshot wounds. He was pronounced dead at the scene. Detectives later viewed surveillance footage, which showed Grasty and Wright firing their weapons at the victim in the same area where the police had recovered shell casings. *See id*.

Several weeks later, police detectives read Grasty his *Miranda* warnings, which he voluntarily waived. Grasty denied seeing or shooting the victim that night, but after the police told him they had surveillance video, Grasty admitted carrying a gun that night and shooting it but claimed he did not fire the fatal shots. *See id.*

Grasty and Wright had a joint jury trial in April 2018. Relevant to the instant appeal, the Commonwealth charged Grasty as an accomplice to both first- and third-degree murder. The trial court charged the jury as follows with respect to accomplice liability for first-degree murder:

When two or more people are charged with a crime of first[-]degree murder and one or more of them did not actually commit the murder, they may still be guilty of first[-]degree murder if they are found to be an accomplice of the one who did it. To be an accomplice, the Commonwealth must prove beyond a reasonable doubt the following two things. First, that the [d]efendant intended that a first[-]degree murder occur. And, second, that the defendant aided or agreed to aid or attempted to aid the other person in committing it.

* * * * *

To sum up, a [d]efendant may not be found guilty of first[-]degree murder committed by another unless the [d]efendant himself had the specific intent to commit such a murder and then aided or agreed to aid or attempted to aid the other person in committing it.

N.T., 4/5/18, at 125-26. The trial court did not charge the jury on accomplice liability with respect to third-degree murder and trial counsel did not object to the omission. *See id*. at 134.

During deliberations, the jury asked several questions regarding the relationship between co-defendant Wright's diminished capacity defense and accomplice liability as it related to Grasty. The jury first asked, "Can Wright be guilty of third[-]degree murder and Grasty guilty of first[-]degree murder based on . . . diminish[ed capacity], and accomplice [liability?] *Id*. at 138. The trial court responded:

- 3 -

Now, let me just answer that in two ways. Okay? First of all, I want to make sure the jury is clear. The defense of diminished capacity only applies to [] Wright. . . .

* * * * *

Accomplice liability, and I know that these are terms of art we're talking about[] legal terms of art . . .. [I] believe that if you read this definition in depth again, that that may answer your question. If it doesn't, come back and ask me again. I can read this to you[,] but the general concept of accomplice liability applies to both [d]efendants. . . . I can't go beyond that. You have to use your recollection of the facts, determine the facts, and then apply the facts to those definitions to answer the rest of that question.

*Id*. at 138-39. Neither party objected to this instruction. ***See id***. at 140.

The next day, the jury again asked, "[C]an the accomplice [be guilty of] first degree murder if the person who physically did the offense does not[?]"

N.T., 4/6/18, at 32-33. The court answered:

Okay. This is the same question you asked the first time, right? I cannot give you an answer as to how to return a verdict, okay? Cannot do it, all right? You have to make that decision. You have to evaluate the facts, make a decision about the facts[,] and then read the copy [of the definition] I've given you of ["]accomplice["]. If it's sufficient for conviction, so be it. . . . I can't give you a direction how to answer that question, okay? You have to do that for yourself, all right?

*Id*. at 33. Again, there were no objections. ***See id***. The trial court then went off the record, returned and apparently gave an additional instruction *sua sponte*:

To put it as succinctly as I can, without infringing on your province to return a verdict you think is proper and just, you can return a verdict of not guilty on both, guilty on both, and also you can return different verdicts on the two [d]efendants of the various charges. So[,] I hope that gives you some guidance for you to

reach a decision. Again, **this [c]ourt is not telling you to reach
any decision**. However, if your hang up is do the verdicts have
to be the same for both [d]efendants, the answer is no, they don't
have to. You can return different verdicts on all the charges,
whatever you see fit after you fit the facts in the law.

*Id*. at 35 (emphasis added).

The jurors went back to deliberate. Later that day, the court again,

without objection, *sua sponte* gave some additional instructions:

Again, as I told you before, you have two [d]efendants. We have
two verdict sheets. You should consider each [d]efendant
separately, the charges on each [d]efendant, okay? You have the
charge, the accomplice liability charge.

\* \* \* \* \*

You can have different verdicts on the charges, okay, for the two
[d]efendants, or they can all be the same, not guilty, guilty, okay?

*Id*. at 43, 45.

Later that day, the jury asked another question regarding the

relationship between Grasty's liability as an accomplice and Wright's defense

of diminished capacity. The trial court instructed:

Okay. The question is, can an accomplice be convicted of [first-
degree murder] if the person who physically killed the victim gets
convicted of [third-degree murder]? Is that your question? That's
the question? The answer is yes to that question, okay? And then
your next question is, is this verdict legal? Yes. It's a legal
verdict; okay, does that answer your question?

*Id*. at 46-47.

Following further deliberations, the jury convicted Grasty of first-degree

murder as an accomplice and Wright of third-degree murder, as well as

convicting them both on related charges. In May 2018, the trial court

- 5 -

sentenced Grasty to the mandatory term of life in prison without parole and a consecutive aggregate sentence of thirty to sixty months in prison on the remaining charges.

Grasty appealed, and this Court affirmed the judgment of sentence. *See Grasty*, 239 A.3d 97. The Pennsylvania Supreme Court subsequently denied Grasty's petition for allowance of appeal. *See Commonwealth v. Grasty*, 242 A.3d 310 (Pa. 2020).

In September 2021, Grasty filed this timely PCRA petition. The PCRA court appointed counsel who filed an amended PCRA petition. The Commonwealth filed a response in April 2023. In October 2023, the PCRA court issued notice of its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Grasty did not file a response. The PCRA court dismissed the petition in November 2023. This timely appeal followed.[3]

On appeal, Grasty raises two issues for our review:

I.      Was trial counsel ineffective for failing to object to the trial court's charge to the jury as to accomplice liability as it pertains to first[-] and third[-]degree murder?

II.     Was trial counsel ineffective for failing to object to the trial court's response to three separate questions asked by the jury during deliberation asking if they could convict [Grasty] of first[-]degree murder under accomplice liability and find [Grasty's] co-defendant who committed the actual killing guilty of third[-]degree murder?

Grasty's Brief at 5 (capitalization standardized).

_____

[3] Grasty and the PCRA court complied with Pa.R.A.P. 1925.

We review the PCRA court's denial of relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Busanet***, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." ***Id***. [T]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." ***Commonwealth v. Hanible***, 30 A.3d 426, 452 (Pa. 2011) (citing Pa.R.Crim.P. 909(b)(2)).

Instantly, Grasty claims trial counsel was ineffective. It is well settled that

> counsel is presumed to have been effective and [] the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim. ***Cooper***, 941 A.2d at 664.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citations and quotation marks omitted). "Counsel cannot be found ineffective for failing to

pursue a baseless or meritless claim." ***Commonwealth v. Taylor***, 933 A.2d 1035, 1042 (Pa. Super. 2007) (citation omitted).

In his first issue, Grasty maintains trial counsel was ineffective for failing to object to the trial court's omission of third-degree murder from the accomplice liability charge. ***See*** Grasty's Brief at 12-15. Grasty maintains that by mentioning only first-degree murder in its charge, the trial court "compel[led] the jury to render a particular verdict." ***Id***. at 15 (citation omitted).

The PCRA court's opinion did not address the omission of accomplice liability for third-degree murder from its charge. ***See*** Trial Court Opinion, 5/28/24, at 5-6. Instead, it noted because it gave a legally correct instruction, trial counsel could not be found ineffective for failing to object to it. ***See id***.

Pertinently,

[i]n reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. ***We must view the charge as a whole***; the trial court is free to use its own form of expression in creating the charge. A trial court has broad discretion in phrasing its instructions[] and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Moreover, it is well-settled that the trial court has wide discretion in fashioning jury instructions.

***Commonwealth v. Williams***, 176 A.3d 298, 314 (Pa. Super. 2017) (citations omitted, emphasis added).

After a thorough review, we are constrained to find Grasty waived this claim. Although Grasty's argument on this issue is three and one-half pages

long, he devotes only two sentences to the claim the court's instructions compelled a particular verdict:

> Trial court[s] must leave to the jury the ultimate determination of the facts of the case. The trial court's instructions must not compel the jury to render a particular verdict. [*See*] *Commonwealth v. Batty*, 169 A.3d 70, 78 (Pa. Super. 2017).

Grasty's Brief at 15 (capitalization and citation format regularized). Further, Grasty's argument regarding trial counsel's alleged ineffectiveness consists of a single sentence: "Trial [c]ounsel should have objected to said instruction and the failure of the [t]rial [court] to discuss [t]hird[-][d]egree [m]urder was extremely prejudicial." *Id*.

It is well settled that "mere issue spotting without analysis or legal citation to support an assertion precludes appellate review of a matter." *Coulter v. Ramsden*, 94 A.3d 1080, 1089 (Pa. Super. 2014) (citation omitted); *see also* Pa.R.A.P. 2119(a) (stating the appellant's brief "shall have ... such discussion and citation of authorities as are deemed pertinent."). Moreover, Grasty does not meaningfully address any of the three prongs necessary to establish an ineffectiveness claim under the PCRA. *Wholaver*, *supra*. Grasty fails to develop his ineffectiveness claims beyond the bald allegations set forth above. Grasty fails to demonstrate prejudice resulting from counsel's allegedly deficient performance. Claims of ineffective assistance of counsel are not self-proving. *See Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). Thus, Grasty has failed to establish trial counsel was ineffective.

In any event, the claim is without merit. Grasty's reliance on **Batty** is misplaced. Initially, **Batty** is a direct appeal and does not substantively address ineffective assistance of counsel for failing to object to a jury instruction. **See Batty**, 169 A.3d at 71. Further, **Batty** is a **Commonwealth appeal** where this Court **overturned** the trial court's grant of a new trial because it erroneously believed its legally correct jury instruction compelled a particular verdict. **See id**. at 76-79. In overturning the grant of a new trial, we reiterated that jury charges must be examined as a whole; various portions of an instruction should not be examined in isolation as Grasty does here. **See id**. at 78.

Grasty does not point to any specific allegedly erroneous language in the accomplice liability charge and does not argue that the charge as a whole was deficient and/or failed to inform the jury that the Commonwealth charged him as an accomplice to both first- and third-degree murder. **See** Grasty's Brief at 12-15. Moreover, our review of the court's jury charges demonstrates the court accurately instructed the jury on the burden of proof, reasonable doubt, first- and third-degree murder, and accomplice liability. **See** N.T., 4/5/18, at 112-14, 124-29. Lastly, as we noted on direct appeal, the evidence. which included a video compilation shot from several different cameras showing Grasty shooting the fleeing victim, coupled with Grasty's partial confession was sufficient to support the jury's verdict of first-degree murder as an accomplice. **See Com v. Grasty**, 239 A.3d 97 (unpublished

memorandum at *4). Thus, Grasty cannot show trial counsel's failure to object to the trial court's omission of third-degree murder from the accomplice liability charge prejudiced him. Even if not waived, his first issue does not merit relief.

In his second issue, Grasty maintains trial counsel was ineffective for not objecting to the trial court's answers and *sua sponte* instructions to the jury's questions regarding the interplay between Wright's defense of diminished capacity and the law of accomplice liability applicable to Grasty. **See** Grasty's Brief at 15-21. Grasty again relies on this Court's decision in **Batty** for the proposition the court compelled a particular verdict. **See id**. at 21.

The trial court explained its responses were "correct statements of law, and the jury was entitled to hear" them. PCRA Court Opinion, 5/28/24, at 7. Thus, the court maintains there was no basis for counsel to object. **See id**.

Our review of the record discerns no error on the part of the PCRA court in denying relief on this claim. Grasty does not argue the trial court's instructions and answers were legally erroneous. **See** Grasty's Brief, at 15-21. Moreover, Grasty has not suggested any valid basis for trial counsel to have raised an objection to the court's answers. **See id**. Further, to the extent the jury's verdicts are viewed as inconsistent, it is settled law that:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's

- 11 -

> sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment.

***Commonwealth v. Tha***, 64 A.3d 704, 711 (Pa. Super. 2013).  Lastly, we see no indication that the trial court's instructions compelled a particular verdict.  Rather, as the portions of the trial transcript quoted above make clear, the court repeatedly told the jury it had to make its own decisions and could reach different verdicts as to each defendant if the evidence compelled that result.  Here, the record establishes the jury had settled on a verdict but were unsure if it was a legal verdict, and the trial court's instructions accurately answered that question.  Grasty's second issue does not merit relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/13/2025